NANCY J. JOHNSON BAYER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11408-89.      Filed January 9, 1992.

*Thomas J. O'Rourke,* for petitioner.
*Diane Helfgott,* for respondent.

### SUPPLEMENTAL OPINION

DRENNEN, *Judge:* This matter is before the Court on respondent's motion for reconsideration of our opinion, T.C.

Memo. 1991-282, pursuant to Rule 161.[1] In that opinion, filed June 24, 1991, we concluded, inter alia, that petitioner was entitled to an award of attorney's fees and litigation costs under section 7430. By order, dated June 27, 1991, the parties were directed to submit a computation of the attorney's fees and costs to which petitioner was entitled under section 7430.

Section 7430(c)(1)(B)(iii) limits the hourly rate for attorney's fees to $75, with allowances for increases in the cost of living or other special factors. We have held that this rate may be adjusted for increases in the cost of living. *Cassuto v. Commissioner,* 93 T.C. 256, 273 (1989), affd. in part, revd. and remanded in part 936 F.2d 736 (2d Cir. 1991). Respondent does not disagree but argues that the cost of living adjustments (COLA's or COLA) to the $75 per hour rate limitation should be computed from January 1, 1986, the effective date of section 7430(c)(1)(B)(iii), the COLA provision which first imposed the hourly rate limitation in Tax Court cases.

Petitioner, on the other hand, argues that the cost of living adjustments to the $75 per hour rate limitation should be computed from October 1, 1981, the effective date of the Equal Access to Justice Act (EAJA), Pub. L. 96-481, tit. II, 94 Stat. 2325-2330, 28 U.S.C. sec. 2412 (1988), 5 U.S.C. sec. 504 (1982), which first provided for COLA's to attorney fee awards in non-Tax Court cases. Petitioner argues that although the EAJA does not apply to litigation in the Tax Court and section 7430(c)(1)(B)(iii) does, the circumstances under which section 7430(c)(1)(B)(iii) was enacted show that Congress intended to conform the award of attorney's fees under section 7430 to the EAJA to the maximum extent possible. In our opinion issued in this case on June 24, 1991, we concluded that the cost of living adjustments to the $75 rate limit on attorney's fees under section 7430 should be computed from the EAJA's enactment date, October 1, 1981, which is the same conclusion we reached in *Cassuto v. Commissioner, supra* at 272-273.

The U.S. Court of Appeals for the Second Circuit, in an opinion dated June 26, 1991, reversed our decision in *Cassuto*

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 in effect for the years in issue.

*v. Commissioner, supra,* holding that the cost of living adjustments to the $75 statutory cap on attorney fee awards should be calculated from January 1, 1986, the effective date of section 7430(c)(1)(B)(iii), and remanded that case to this Court. *Cassuto v. Commissioner,* 936 F.2d at 744. Our opinion in petitioner's case was issued 2 days before the Second Circuit issued its opinion in *Cassuto v. Commissioner, supra.* In light of the Second Circuit's reversal on this issue, respondent filed a motion for reconsideration in petitioner's case. The sole issue presented in respondent's motion is what date to use in calculating COLA's to attorney fee awards under section 7430(c)(1)(B)(iii). Petitioner objected, and we took the motion under consideration.

There is no dispute between the parties with respect to the facts and issues here involved. Of course, this Court will honor the mandate of the Second Circuit in the *Cassuto* case. Furthermore, this Court is bound to similarly decide other cases raising the same issue when those cases are squarely in point and their venue for appeal lies in the Second Circuit. *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). However, since petitioner has at all relevant times resided in the District of Columbia and thus venue for any appeal of her case will lie with the U.S. Court of Appeals for the District of Columbia Circuit, we are not required in her case to follow the mandate of the Second Circuit in *Cassuto v. Commissioner,* 936 F.2d 736 (2d Cir. 1991), affg. in part, revg. and remanding in part 93 T.C. 256 (1989). *Golsen v. Commissioner, supra* at 756-757.

We observe that the U.S. Court of Appeals for the District of Columbia Circuit, to which an appeal in this case would lie, has held that the baseline year for calculating COLA's to the $75 cap on attorney's fees provided for in the EAJA is October 1, 1981, the date on which the EAJA became effective, not 1985, when the sunset provision of the EAJA was repealed. *Wilkett v. I.C.C.,* 844 F.2d 867, 874-875 (D.C. Cir. 1988); *Hirschey v. F.E.R.C.,* 777 F.2d 1, 5 (D.C. Cir. 1985). However, the Court of Appeals has not yet decided the precise question raised by respondent's motion, that is, whether cost of living adjustments to the $75 limit provided by section 7430(c)(1)(B)(iii) should be calculated beginning October 1, 1981, the effective date of the EAJA, or January 1, 1986, the

effective date of section 7430(c)(1)(B)(iii), which applies to costs of litigation in the Tax Court.

We also observe that the courts which have decided cases involving either of these related issues are not in agreement as to how they should be resolved. Compare *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702 (2d Cir. 1987) with *Cassuto v. Commissioner,* 936 F.2d 736, 742-743 (2d Cir. 1991), affg. in part, revg. and remanding in part 93 T.C. 256 (1989); *Bode v. United States,* 919 F.2d 1044 (5th Cir. 1990); *Mattingly v. United States,2* 711 F. Supp. 1535 (D. Nev. 1989), revd., vacated, and remanded 939 F.2d 816 (9th Cir. 1991).

This situation leaves the Tax Court on the horns of a dilemma. That is, when, as in petitioner's case, the same issue comes before it again—which appellate court should be followed. The Tax Court's current policy of following its own convictions in such situations was first developed in *Lawrence v. Commissioner,* 27 T.C. 713 (1957), revd. on other grounds 258 F.2d 562 (9th Cir. 1958). In that case we stated:

> One of the difficult problems which confronted the Tax Court * * * was what to do when an issue came before it again after a Court of Appeals had reversed its prior decision on that point. Clearly, it must thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, the obvious procedure is to follow the higher court. But if still of the opinion that its original result was right, a court of national jurisdiction to avoid confusion should follow its own honest beliefs until the Supreme Court decides the point. The Tax Court early concluded that it should decide all cases as it thought right. [27 T.C. at 716-717; fn. refs. omitted.]

The *Lawrence* doctrine is still alive except, of course, in cases where a Court of Appeals has handed down a decision squarely in point and appeal from our decision lies to that Court of Appeals. *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).[2]

---

[2]In *Golsen v. Commissioner,* we further stated:

Section 7482(a), I.R.C. 1954, charges the Courts of Appeals with the primary responsibility for review of our decisions, and we think that where the Court of Appeals to which appeal lies has already passed upon the issue before us, efficient and harmonious judicial administration calls for us to follow the decision of that court. * * * We shall remain able to foster that uniformity by giving effect to our views in cases appealable to courts whose views have not yet been expressed, and, even where the relevant Court of Appeals has already made its views known, by explaining why we agree or disagree with the precedent that we feel constrained to follow.

To the extent that *Lawrence* is inconsistent with the views expressed herein it is hereby overruled.

[54 T.C. at 757-758; citations and fn. refs. omitted.]

Under the Tax Court's present policy, as noted by the Fifth Circuit Court of Appeals, the Tax Court, because it has national jurisdiction, "should, except in cases geographically destined for a disapproving Circuit, follow its conviction that its original result was correct until decided otherwise by the Supreme Court." *Delta Metalforming Co. v. Commissioner,* 632 F.2d 442, 445 n.4 (5th Cir. 1980), affg. T.C. Memo. 1978-354. Although a series of reversals may incline the Tax Court to bow to higher authority, see *Bankers Union Life Insurance Co. v. Commissioner,* 62 T.C. 661, 675 (1974), the switching of positions by the Tax Court may lead to confusion or may constitute an improper performance of the Court's function. See *Bradford v. Commissioner,* 60 T.C. 253, 261 (1973) (Drennen, J., dissenting).

In reviewing the question of what is the correct date to use for calculating COLA's to attorney's fees allowable under section 7430(c)(1)(B)(iii), we have given consideration to the reasoning of the Courts of Appeals reflected in a number of opinions. These include the Second Circuit's opinions in *Cassuto v. Commissioner,* 936 F.2d 736 (2d Cir. 1991), affg. in part, revg. and remanding in part 93 T.C. 256 (1989), and *Trichilo v. Secretary of Health and Human Services, supra;* the U.S. Court of Appeals for the District of Columbia's opinions in *Hirschey v. F.E.R.C., supra,* and *Wilkett v. I.C.C., supra;* the Fifth Circuit's opinion in *Bode v. United States,* 919 F.2d 1044, 1053 (5th Cir. 1990) (which arrived at the same conclusion as did the Second Circuit in *Cassuto*); as well as the reasoning of this Court in *Cassuto v. Commissioner,* 93 T.C. 256, 272-273 (1989), affd. in part, revd. and remanded in part 936 F.2d 736 (2d Cir. 1991).

With all due respect to the Courts of Appeals for the Second and Fifth Circuits, we conclude that Congress, in providing for cost of living adjustments in section 7430, intended the computation to start at the same time the COLA's were started under the EAJA, which was October 1, 1981. Although neither the express language of section 7430, nor that of the Tax Reform Act of 1986, which added section 7430(c)(1)(B)(iii), provides that the COLA start date should be October 1, 1981,

we think the circumstances under which section 7430(c)(1)(B)(iii) was enacted in 1986 supports this view.

Section 7430 has its roots in the EAJA. The EAJA was enacted in 1980 and became effective for taxable years beginning in 1981. Pub. L. 96-481, tit. II, 94 Stat. 2325-2330, 28 U.S.C. sec. 2412 (1988), 5 U.S.C. sec. 504 (1982). The EAJA provided for the mandatory award of attorney's fees to prevailing parties in administrative and civil actions, including tax controversies, brought by or against the United States. It was not, however, applicable to Tax Court proceedings. There is no indication in the legislative history of the EAJA why this is so. Certainly Congress was not deliberately making a distinction between the value of legal services in the field of tax law and the value of litigation services in other fields of law. When the EAJA expired under its own provisions in 1985, attention was attracted to the provision and it was effectively reenacted in that year.

Prior to 1986, section 7430, which applied to Tax Court proceedings, provided a $25,000 ceiling on the amount of recoverable attorney's fees. However, the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(a), 100 Stat. 2085, 2572, which conformed section 7430 more closely to the EAJA, eliminated the $25,000 cap and substituted a $75 an hour limitation on attorney's fees, unless the Court determines that a higher rate is justified. See sec. 7430(c)(1)(B)(iii). Section 7430(c)(6) provides that the term "court proceeding" means "any civil action brought in a court of the United States (including the Tax Court and the United States Claims Court)." Thus, both the EAJA and section 7430, as amended, currently provide for the recovery of attorney's fees at a maximum of $75 per hour with justifiable cost of living adjustments.

It seems clear from the mere language of the two statutes that Congress intended to equalize the attorney's fees available in tax cases under section 7430, with those available in other types of litigation under the EAJA. When drafting section 7430(c)(1)(B)(iii), Congress not only adopted the $75 figure from the existing EAJA, but it also adopted the existing COLA language contained in the EAJA.[3] In reaching our conclusion

---

[3]Compare Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551, 100 Stat. 2752 and H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 801-802, with Pub. L. 96-481, sec. 204, 94 Stat. 2327, 2329-2330.

that the COLA's should be indexed from 1981, we have also given consideration to the conference report of the Tax Reform Act of 1986[4] and to the statements of Senators Baucus, Grassley, and Domenici on the floor of the Senate when the Senate was considering the bill to amend section 7430.[5] These senators sponsored the provision that added section 7430(c)(1)(B)(iii) to the Internal Revenue Code, and their remarks indicate what they were trying to accomplish through that amendment. In particular, the following statement of Senator Baucus, made during an address to the Senate on November 14, 1985, provides strong support for the view that the authors of the 1986 amendment to section 7430 intended that the amount of the fee awards would be the same under the EAJA and section 7430.

It stands to reason that a litigant in a tax case should not have a more difficult burden upon him to quality [sic] for costs and fees against the government, *or to be limited in the amount of cost or fee awards, than any other party in a civil action against the federal government.* [Statement of Senator Baucus, 131 Cong. Rec. S15476 (daily ed. Nov. 14, 1985) (quoting Louise L. Hill, Assistant Professor of Law, University of Toledo College of Law); emphasis added.]

Finally, we have considered the general explanation of the Tax Reform Act of 1986 prepared by the Staff of the Joint Committee on Taxation, which provides the staff's interpretation of Congress' reason for amending section 7430 in the first place:

Congress believed that the provision authorizing awards of attorney's fees should be continued but must be modified to provide greater consistency between the laws governing the attorney's fees in tax and nontax cases. Specifically, Congress believed that the Equal Access to Justice Act generally provides a more appropriate standard for awarding attorney's fees in tax as well as in nontax cases.[6] [Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 at 1298 (J. Comm. Print 1987).]

---

[4]H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 801-802. In its report, the conference committee states that it adopted the Senate position in order to conform the attorney fee awards more closely to the Equal Access to Justice Act.

[5]131 Cong. Rec. S10274-S10277 (daily ed. July 29, 1985); 131 Cong. Rec. S15475-S15476, S15482-S15483 (daily ed. Nov. 14, 1985).

[6]The Joint Committee explanation has been relied upon by courts in interpreting tax statutes. See *Federal Power Commission v. Memphis Light, Gas & Water Division,* 411 U.S. 458, 471-472 (1973); *Todd v. Commissioner,* 89 T.C. 912, 915 (1987), affd. 862 F.2d 540 (5th Cir. 1988).

However, in *Cassuto v. Commissioner, supra,* the Second Circuit, in reversing this Court on the COLA issue, stated that there was no evidence that Congress intended to predate section 7430's COLA structure to the date of the EAJA. The Second Circuit said that had that been the intent of Congress it would have been easy for Congress to make this known. Instead, according to the Second Circuit, rather than completely conforming the statutes, Congress made clear its intent to separate the award of litigation costs in the tax area from the general civil area to which the EAJA applies. See *Cassuto v. Commissioner,* 936 F.2d at 742.

We cannot find such a clear intent on the part of Congress, nor can we find any reason why Congress should have so intended. To the contrary, tax litigation in this day and age is certainly no less time consuming and requires no less specialized skills than does the "general civil area" referred to by the Second Circuit. The fact that the EAJA did not apply to Tax Court cases when it was initially enacted could not have provided Congress with a reason for differentiating between tax and general litigation. It is clear that Congress was making an effort to make similar provisions for fees in both tax and general litigation.[7] And, as the Court pointed out, the requirements of justification of the Government's position and exhaustion of other remedies prior to commencing litigation made it more difficult for Tax Court litigants to win fee awards under section 7430 than for other litigants seeking recovery under the EAJA.

While we agree that Congress set up two separate, albeit similar, fee award systems for tax and nontax cases, we do not think that suggests that the fee awards in tax litigation should be less than fee awards in the general civil area. We also note that to limit the computation of COLA's in tax litigation at this time could establish a permanent gap between legal fees allowable in tax litigation and general litigation. Such a discrepancy simply does not comport with reality.

In reaching its conclusion on this issue in *Cassuto v. Commissioner, supra,* the Second Circuit distinguished its opinion in *Trichilo v. Secretary of Health and Human Services,*

---

[7]See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 at 1298-1299 (J. Comm. Print 1987).

*supra,* which held that COLA's available under the EAJA should date from 1981 because when Congress passed the "new" EAJA in 1985, it merely repealed the 1981 EAJA's self-expiring sunset provision and left untouched section 2412(d)(2)(A) of the 1981 EAJA allowing for cost of living increases to the $75 cap on attorney's fees. In *Cassuto,* the Second Circuit stressed that *Trichilo* dealt specifically with the circumstances of the EAJA's 1985 "reenactment" and did not address the question of whether other statutes, such as the Internal Revenue Code, should use the EAJA's effective date of 1981 in calculating the COLA's to attorney's fees available under them.

The fact that *Trichilo* did not specifically deal with the COLA's available under section 7430, nonetheless, does not persuade us that Congress, when amending section 7430 in 1986, did not intend to index the COLA's available under that provision back to 1981, the EAJA's effective date, so as to carry out its objective of making the attorney's fees available in tax cases brought under the Internal Revenue Code "conform * * * more closely to the Equal Access to Justice Act." H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 801. Instead, the fact that Congress adopted both the $75 maximum fee rate and the exact COLA language that appeared in the original 1981 EAJA when amending section 7430 in 1986, the statements of members of Congress at the time section 7430(c)(1)(B)(iii) was being considered, as well as generally accepted tenets of statutory construction, convince us that Congress meant to equalize the litigation fee structure in tax and nontax cases, and therefore, that COLA's to the $75 rate awarded under section 7430 be indexed back to October 1, 1981. There is nothing in the legislative history of section 7430 to indicate the contrary.

The U.S. Court of Appeals for the District of Columbia Circuit has also addressed the issue of what year should serve as the baseline date in measuring COLA's awarded under the EAJA. In *Hirschey v. F.E.R.C.,* 777 F.2d 1, 4 (D.C. Cir. 1985), the Court of Appeals recognized that, generally speaking, the statutory maximum on attorney's fees should be increased to reflect changes in the cost of living. The Court of Appeals also rejected the Government's argument that the 1985 amendment to the EAJA, which did not alter the subsection pertaining to the $75 rate limit and cost of living increases, compelled the

court to regard the $75 per hour amount as fully compensatory. See 28 U.S.C. 2412(d)(2)(A) (1988); Pub. L. 96-481, tit. II, 94 Stat. 2325, 2328-2329. Following its decision in *Hirschey v. F.E.R.C., supra,* the Court of Appeals, in *Wilkett v. I.C.C.,* 844 F.2d 867, 874-875 (D.C. Cir. 1988), held that the baseline date for measuring COLA's awarded under the EAJA is October 1, 1981, the date the EAJA became effective. The court rejected the Government's argument that Congress intended to form a whole new baseline year for indexing COLA's in 1985.

Respondent bases his motion for reconsideration entirely on the Second Circuit's reversal of *Cassuto* on the issue discussed above. We believe that our conclusion on this issue in both *Cassuto* and this case was correct, and while we have reconsidered our conclusion in *Cassuto,* and this case, we think they were correct. Hence, we reaffirm our opinion filed in this case June 24, 1991. Consequently, respondent's motion for reconsideration is denied.

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, GERBER, WRIGHT, WELLS, RUWE, WHALEN, COLVIN, HALPERN, and BEGHE, *JJ.,* agree with this opinion.

PARR, *J.,* did not participate in the consideration of this opinion.