THOMAS V. TINSLEY, JR. AND KATHERINE S. TINSLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tinsley v. Commissioner
Docket No. 28722-88
United States Tax Court
T.C. Memo 1992-195; 1992 Tax Ct. Memo LEXIS 204; 63 T.C.M. (CCH) 2629; March 31, 1992, Filed *204 An appropriate order will be issued. Thomas W. Ostrander, for petitioners. Michael D. Baker, Kenneth J. Rubin, and Ruth M. Spadaro, for respondent. COLVIN
COLVIN
MEMORANDUM OPINION COLVIN, Judge: This matter is before the Court on Petitioners' Motion for Award of Reasonable Litigation Costs under section 7430 and Rule 231. The case was settled without trial. The basis of settlement was submitted at the calendar call for the case. The issues for decision are: (1) Whether we will consider respondent's position before the petition was filed on November 2, 1988, in deciding if respondent's litigation position was reasonable, or allow litigation expenses before that date. We hold that we will not. (2) Whether respondent's position relating to substantiation provided by petitioners was substantially justified. We hold that it was not. (3) Whether petitioners exhausted all administrative remedies. We hold that they did. (4) Whether petitioners' costs in connection with this motion for litigation costs are covered. We hold that they are. (5) Whether petitioners have shown the presence of a special factor which justifies raising the $ 75 limit on the hourly *205 rate. We hold that a special factor has not been shown. (6) Whether the $ 75 hourly limit will be increased because of an increase in the cost of living and if so, from which date the $ 75 hourly rate is indexed. We hold that it is indexed from October 1, 1981. Bayer v. Commissioner, 98 T.C. 19 (1992). (7) What amount, if any, of petitioners' litigation costs is allowable. We hold that it is $ 17,271.61. In accordance with Rule 232, the parties have submitted affidavits and memoranda supporting their positions. We decide the motion based on petitioners' motion, respondent's objection, and affidavits and exhibits thereto provided by both parties. There are no significant conflicts of fact presented by the affidavits of each party. Neither party requested a hearing, and we conclude that a hearing is not necessary for the proper consideration and disposition of this motion. Rule 232(a)(3). References to petitioner in the singular are to Thomas V. Tinsley, Jr. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Background
*206 Petitioners were husband and wife residing in Mountain Top, Pennsylvania, when they filed their petition in this case. Petitioner Thomas V. Tinsley, Jr., has been a certified public accountant since 1970. The tax years at issue are 1977, 1978, and 1979. 1. The Audit
The examining agent was originally Mr. Al Rava. Agent Rava conducted an examination of petitioners' records from approximately December 1983 to January 1986. The examination was conducted in petitioner's office in Wilkes-Barre, Pennsylvania. Petitioner provided Agent Rava with the hundreds of documents he requested. Petitioners provided Agent Rava with an immense number of business and accounting records and supporting documents, such as (but not limited to) leases, bills, ledgers, trial balances, journal entries, client service data, ledger cards, cash disbursement sheets, tax forms and records, receipts for expenses, bank statements, canceled checks, depreciation records, petty cash records, day books, and other records. Sometime before January 31, 1986, respondent notified petitioner that Agent Rava had retired and that Internal Revenue Service agent, Mr. Clemence Scott, had taken over the case. Agent *207 Scott issued a report captioned "Income Tax Examination Years 1977, 1978, and 1979", dated January 31, 1986. Agent Scott had earlier audited petitioners' returns for 1973, 1974, and 1975, and transmitted the case to the Criminal Investigation Division. The IRS referred the case to the Department of Justice, which declined to prosecute petitioner. On February 10, 1986, petitioner wrote to Agent Scott and told him that the information previously examined by Agent Rava was available at petitioner's office for his review. Petitioner enclosed with his letter 29 pages of documentation concerning adjustments set forth in Agent Scott's report. This information had been previously provided to Agent Rava. By letter dated November 6, 1986, the Internal Revenue Service sent petitioners a Form 4549-A, Income Tax Examination Changes, dated September 30, 1986. This form covered the years 1977, 1978, and 1979, the same years covered by the audit. Petitioners filed a protest on March 9, 1987, contesting all adjustments made by the Form 4549-A. On April 15, 1987, the Internal Revenue Service issued a "Revised Report, Form 4549-A Income Tax Examination Changes". It was provided to petitioner *208 and his counsel at the first Appeals conference held on July 2, 1987. 2. The Appeals Conference
Ms. Margaret Crouse was the Appeals officer in this case, and Mr. Thomas W. Ostrander represented petitioners. The Appeals conference was held July 2, 1987. Petitioners submitted documents in support of their protest to the Appeals Division, including copies of all documents previously provided during petitioners' audit. Petitioners provided additional documents to clarify certain expenses and their treatment of income when requested by the Appeals officer. On June 30, 1988, the Appeals officer sent a letter to petitioners stating a basis on which the case could be settled. Petitioners did not respond to it because they believed it was an "all-or-nothing" offer, and items which they thought they were clearly entitled to deduct were not allowed. Respondent issued the notice of deficiency on August 9, 1988. It included the following adjustments: Year
Adjustment
Amount
1977
Rent deduction
$ 11,194 Outside services
4,200 1978
Gross receipts
79,061 1979
Gross receipts (Schedule C)
(22,477)
Legal and professional services
1,156 Tinsley & Co. partnership (Schedule E)
26,777 *209 3. Petition and Answer
Petitioners filed the petition on November 2, 1988, and respondent filed the answer on December 23, 1988. The answer made general denials of all claims made by petitioners. The answer did not make any concessions in response to substantiation that had been provided by petitioners. On August 14, 1989, counsel for both parties met for the first time to discuss this case. At that meeting, respondent's counsel conceded the $ 79,061 gross receipts issue for 1978. Respondent's counsel also asked for additional information about petitioners' Schedule C rental expenses for 1977. Petitioners had previously provided this information to the Appeals officer in July and October 1987. On August 23, 1989, respondent's counsel wrote petitioners' counsel to ask for further information to substantiate the 1977 rental expenses. On August 23, 1989, petitioners' counsel sent respondent's counsel documentation concerning the Pressed Steel Co. payment to petitioner and certain interest deductions. He included a copy of the Form 1099-NEC issued by the Pressed Steel Co., a division of the Eastern Pennsylvania Corp., to petitioner for $ 4,300. On September 7, 1989, *210 petitioners' counsel wrote respondent's counsel concerning the rent issue. He stated, as he previously did to the Appeals officer, that errors were made in postings to the loan receivables account, and the adjustment of these amounts was made by adjusting journal entry #2 to reflect the amounts paid to TPD Realty. The case was set for trial in Philadelphia at a trial session of this Court beginning October 30, 1989. On that date the parties agreed to a settlement and the case was not tried. The basis of settlement differed from the offer made by the Appeals officer on June 30, 1988, as indicated below: Item
Appeals Offer
Answer
Stipulation
1977 rent
disallow $ 11,194
disallow
disallow $ 275
deduction $ 11,194
1977 outside
disallow $ 4,200
disallow
no change to
services
$ 4,200
tax return
1977 firm
disallow $ 8,067
disallow
disallow $ 7,591
relations
$ 10,084
1977 travel
disallow $ 3,805
disallow
disallow $ 3,805
$ 4,240
1977 office
disallow $ 3,624
disallow
disallow $ 2,799
$ 3,924
1977 auto
disallow $ 1,313
disallow
disallow $ 1,313
$ 2,197
1978 gross
no change to
$ 79,061
no change to
receipts
tax return
adjustment
tax return
Schedule C
1978
$ 524 additional
disallow
$ 554 additional
interest
deduction
$ 10,691
deduction
1979 gross
$ 22,477 adjustment
$ 22,477
no change to
receipts
adjustment
tax return
Schedule C
1979 gross
$ 26,777 adjustment
$ 26,777
no change to
receipts --
adjustment
tax return
Schedule E,
Tinsley & Co.
1979
disallow $ 7,111
disallow
no change to
interest
$ 16,379
tax return
1979 legal/
no change to
disallow
no change to
professional
tax return
$ 1,156
tax return
fees
*211 4. Petitioners' Litigation Costs
Petitioners' counsel before Appeals, and before this Court, was Thomas W. Ostrander. Mr. Ostrander is a partner in the Philadelphia law firm Duane, Morris & Heckscher. He has practiced law since 1978, primarily in the field of civil and criminal tax litigation. He has an LL.M. in taxation from New York University. Mr. Ostrander's bills to petitioners for services performed in this matter, from July 11, 1989, through July 31, 1991, are as follows: DATE OF BILL
AMOUNT OF FEE
ATTORNEY HOURS
AMOUNT OF COSTS
September 5, 1989
[1] $  1,699.00
3.7
$    81.28
October 9, 1989
2,795.00
14.7
52.77
December 17, 1989
4,562.00
25.0
92.80
April 3, 1990
190.00
1.0
33.14
July 16, 1990
5,312.50
25.5
1,048.12
April 27, 1991
33.00
0.2
195.61
May 8, 1991
2,745.00
12.2
1.80
August 13, 1991
8,795.00
61.4
504.68
TOTAL:
$ 26,131.50
143.7
$ 2,010.20
Discussion
The amendments to section 7430 made by *212 the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3743-3747, apply to cases commenced after November 10, 1988. The petition in this case was filed November 2, 1988. Thus, this case is governed by section 7430 before its amendment by TAMRA. Section 7430(a) provides that a prevailing party in a Tax Court proceeding may be awarded reasonable litigation costs. Respondent concedes that petitioners substantially prevailed as defined in section 7430(c)(2)(A)(ii). Petitioners contend, and respondent offers no contention otherwise, that petitioners' net worth was less than $ 2 million. We treat this as respondent's concession of this issue. 1. Was the Government's Position Substantially Justified? a. Background
Petitioners must establish that the position of the United States in the litigation was not "substantially justified". Sec. 7430(c)(2)(A)(i). The substantially justified standard applied to respondent is a reasonableness standard, i.e., whether respondent's actions were substantially justified during the relevant time period in light of legal precedents as applied to the factual development of the case. Sher v. Commissioner, 89 T.C. 79, 84 (1987), *213 affd. 861 F.2d 131 (5th Cir. 1988); Bayer v. Commissioner, T.C. Memo. 1991-282, modified 98 T.C. 19 (1992). [1] We may also consider, among other factors, whether respondent used the costs and expenses of litigation to extract unjustified concessions from petitioner, whether respondent pursued the litigation to harass or embarrass petitioner, or whether respondent's pursuit of the instant litigation was politically motivated. Sher v. Commissioner, supra at 84-85; H. Rept. 97-404, at 12 (1981). The fact that respondent eventually loses or concedes the case is not sufficient to establish that a position is unreasonable. Broad Ave. Laundry and Tailoring v. United States, 693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). *214 Appeal of this case would be to the Court of Appeals for the Third Circuit, which has examined respondent's position in the context of whether it was "reasonably supported in the case law." Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989) (citing as an example Smith v. United States, 850 F.2d 242, 246 (5th Cir. 1988) (requiring taxpayer to prove that the Government's position was unjustified)); cf. Pierce v. Underwood, 487 U.S. 552 (1988) (interpreting the phrase "substantially justified" for purposes of the Equal Access to Justice Act to mean justified to a degree that would satisfy a reasonable person). Respondent argues that respondent's litigation position was substantially justified under section 7430(c)(2)(A)(i). Respondent cites O'Gorman v. Commissioner, T.C. Memo. 1990-73, and Brown v. Commissioner, T.C. Memo. 1989-144, and contends that the settlement of most of the issues in the case was similar to the settlement offer made by the Appeals officer, to which petitioners did not respond. Respondent *215 also asserts that the refusal to concede certain issues earlier was reasonable. Respondent disputes petitioners' assertion that the same substantiation that was sufficient for district counsel to settle the case was made available to the examining agent and Appeals officer. Petitioners argue that documentation was available to or received by the examination agent, Appeals, and district counsel, and that excessive substantiation requirements were imposed. The last Appeals Office offer made before the filing of the petition was contained in the letter to petitioners dated June 17, 1988. This offer took into account only the substantiation previously provided by petitioners with respect to the 1978 gross receipts issue. It did not take into account other substantiation provided by petitioners to the Appeals officer. We believe that petitioners' behavior was generally reasonable and appropriate, and that petitioners' failure to respond to the settlement offers from respondent's Appeals officer was due to petitioners' reasonable belief that they had adequately substantiated the amounts in issue and not to any unreasonable protraction of the proceedings on petitioners' part. Cassuto v. Commissioner, 93 T.C. 256, 269 (1989), *216 affd., revd. and remanded 936 F.2d 736 (2d Cir. 1991); compare Polyco, Inc. v. Commissioner, 91 T.C. 963, 968 (1988); Mearkle v. Commissioner, 90 T.C. 1256, 1261 (1981). b. Time at Which Respondent's Position Is Considered
We next consider whether, in deciding if respondent's position is substantially justified, whether to consider respondent's position beginning when the petition was filed or respondent's prepetition position. The Circuit Courts are divided on the issue of whether to consider respondent's prelitigation position. The Eighth, Tenth, Eleventh, and District of Columbia Circuits do not consider prelitigation positions, which is consistent with the position taken by this Court. Berks v. United States, 860 F.2d 841 (8th Cir. 1988); Wickert v. Commissioner, 842 F.2d 1005, 1008 (8th Cir. 1988); Ewing and Thomas, P.A. v. Heye, 803 F.2d 613, 615-616 (11th Cir. 1986); Baker v. Commissioner, 787 F.2d 637, 641 and n.8 (D.C. Cir. 1986); United States v. Balanced Financial Management, Inc., 769 F.2d 1440, 1450 (10th Cir. 1985); *217 Ashburn v. United States, 740 F.2d 843, 848 (11th Cir. 1984). The First, Second, Fifth, Sixth, and Ninth Circuits have permitted both prelitigation and litigation positions to be examined. Comer Family Trust v. Commissioner, 856 F.2d 775, 780 (6th Cir. 1988); Weiss v. Commissioner, 850 F.2d 111, 115-116 (2d Cir. 1988); Sliwa v. Commissioner, 839 F.2d 602, 606 (9th Cir. 1988); Powell v. Commissioner, 791 F.2d 385, 388-392 (5th Cir. 1986); Kaufman v. Egger, 758 F.2d 1, 4 (1st Cir. 1985). The Seventh Circuit has declined to take a position, finding in the only case in which it has considered the issues that the Government's position both prior to and during litigation was not unreasonable. Harrison v. Commissioner, 854 F.2d 263, 265 n.3 (7th Cir. 1988), affg. T.C. Memo. 1987-52. To date, to our knowledge, the Third Circuit has not ruled directly on this issue, although it has addressed the issue in the context of the award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. section 2412 (1988). In National Resources Defense Council, Inc. v. United States Environmental Protection Agency, 703 F.2d 700, 707 (3d Cir. 1983), *218 the Third Circuit interpreted the term "position" (as used in EAJA to award attorney's fees to the prevailing party unless the position of the United States was substantially justified) to mean "the agency action which made it necessary for the party to file suit." The Third Circuit noted that its interpretation was consistent with the statutory definition of United States as including "any agency and any official of the United States acting in his or her official capacity." We do not believe that the EAJA definition controls here because the language of section 7430 is different in this respect. Section 7430(c)(4) provides that, in determining whether respondent's position is substantially justified, administrative actions or inactions are limited to the period beginning with the point at which respondent's district counsel becomes involved in the proceeding. Egan v. Commissioner, 91 T.C. 705, 712 (1988). Thus, we consider respondent's position from November 2, 1988, the date the petition was filed, until October 30, 1989, when the case was settled. Sokol v. Commissioner, 92 T.C. at 764; Rutana v. Commissioner, 88 T.C. 1329, 1332 (1987); *219 Moran v. Commissioner, 88 T.C. 738, 742 (1987); Baker v. Commissioner, 83 T.C. 822, 827 (1984), affd. on this point 787 F.2d 637, 641-642 (D.C. Cir. 1986). We do not consider the position taken by respondent's agents before the petition was filed in deciding whether respondent's position was substantially justified. c. Respondent's Answer
Respondent's answer was filed December 22, 1988. Respondent's answer merely made a blanket denial of petitioners' contentions. d. The Settlement
Respondent's counsel gave petitioners virtually full credit for the substantiation about 1 year later, but not until petitioners had unavoidably incurred substantial litigation costs. Respondent is not compelled to concede substantiation issues for which the taxpayer has the burden of proof until the taxpayer provides the documentation necessary to prove the taxpayer's contention. Brice v. Commissioner, T.C. Memo. 1990-355; Currie v. Commissioner, T.C. Memo. 1989-23. Once respondent receives substantiation, respondent is given a reasonable period of time to analyze the documentation and modify *220 her position according to the information supplied by the taxpayer. See Sokol v. Commissioner, supra at 765 n.10; Brice v. Commissioner, supra.
Here, petitioners cooperated extensively with respondent's agents and provided substantiation when requested. Petitioners substantiated most of the deductions claimed and that they properly included income. However, petitioners' efforts were apparently to no avail until nearly a year after they filed their petition. The case before us is distinguishable from Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52 (6-month delay to allow completion of audit of a partnership of which the taxpayer was a limited partner, where the taxpayer did not agree to the Commissioner's first request to extend the statute of limitations); Wickert v. Commissioner, 842 F.2d 1005 (8th Cir. 1988), affg. T.C. Memo. 1986-277 (10-month delay in settling case acceptable where the IRS sent a stipulation to the taxpayer conceding the case 10 days after the answer was filed); Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984) *221 (11-month delay reasonable where Department of Justice attorney did not receive the administrative file from the IRS until almost 6 months after the complaint was filed, and then conceded complex case after 5 more months); Sokol v. Commissioner, 92 T.C. 760 (1989) (respondent conceded in the answer the only tax issue raised by the petition). Respondent has given no convincing reason for not having accepted petitioners' substantiation earlier. We conclude that respondent's position was unreasonable. Bayer v. Commissioner, T.C. Memo. 1991-282, modified 98 T.C. 19 (1992) (respondent's inactivity for over 6 months was unreasonable where there was clear evidence in the administrative file that no valid notice of deficiency had been issued); Leewaye v. Commissioner, T.C. Memo. 1988-129 (respondent's failure to review administrative file in timely manner before filing answer was unreasonable). 2. Exhaustion of Administrative Remedies
Respondent argues that petitioners have not exhausted their administrative remedies as required by section 7430(b)(1) and section 301.7430-1(b)(2), Proced. & Admin. Regs. *222 Petitioners did not turn their backs on any realistic opportunity for negotiation. Phillips v. Commissioner, 88 T.C. 529, 533 (1987). Petitioners met with and provided substantiation to the examining agent, and then respondent's Appeals officer. Petitioners were not required to work further with the Appeals officer once it was clear that respondent's agents were not responding to petitioners' exhaustive substantiation. We are satisfied that petitioners exhausted all administrative remedies in this case. Phillips v. Commissioner, supra; Rogers v. Commissioner, T.C. Memo. 1987-374. 3. Costs of Pursuing the Motion for Litigation Costs
Petitioners have claimed $ 18,774.50 for attorney's fees associated with their pursuit of their claim for litigation costs. Petitioner need not show that respondent's position in opposing the motion for litigation expenses lacked substantial justification. A second "substantial justification standard is not required before EAJA fees are awarded for fee litigation itself." Commissioner, Immigration & Naturalization Service v. Jean, 495 U.S. 154 (1990). Respondent *223 objects to the amount of litigation costs claimed by petitioners as unreasonable on the grounds that petitioners did not establish that an award of attorney's fees in excess of the $ 75 hourly rate is justified. We will apply the same maximum hourly rate to petitioner's attorney's fees for the fee litigation as for the underlying case. See Commissioner, Immigration & Naturalization Service v. Jean, supra.
4. Applicable Hourly Rate
a. Has Petitioner Shown the Presence of a Special Factor That Justifies an Hourly Rate Higher Than $ 75
We next consider the maximum hourly rate for petitioners' attorney's fees. Respondent argues that the maximum hourly rate for attorney's fees is $ 75, and that a higher limit should not apply, absent the showing of a special factor justifying a higher rate. Stieha v. Commissioner, 89 T.C. 784, 792 (1987). Petitioners' counsel's affidavit dated June 9, 1990, states that based on his experience and personal knowledge, the hourly rate charged by lawyers in the Philadelphia area with comparable experience exceeds the hourly rate in these bills. Petitioners' counsel's affidavit also states *224 his opinion that no Philadelphia area attorney with comparable experience could or would have performed the services at a lower rate. Section 7430(c)(1)(A)(ii)(III) limits the hourly rate for attorney's fees to $ 75, unless the Court determines that a higher rate is justified because of an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding. The prevailing hourly rate in an area, and the fact that no attorney would have performed the work for $ 75 an hour, are not special factors to justify an increase in the hourly rate under section 7430(c)(1)(A)(ii)(III). Pierce v. Underwood, 487 U.S. 552 (1988); Cassuto v. Commissioner, 93 T.C. 256, 269 (1989), affd., revd. and remanded 936 F.2d 736 (2d Cir. 1991); Huffman v. Commissioner, T.C. Memo. 1991-144. The tax expertise of petitioners' lawyer is also not a special factor which justifies fee reimbursement of more than $ 75 an hour under section 7430. Cassuto v. Commissioner, 936 F.2d at 743. As the Second Circuit stated in Cassuto: The * * * [taxpayers'] *225 contention that their attorney's "tax expertise" warrants awarding of fees at a rate higher than $ 75 an hour makes little sense in the context of their § 7430 reimbursement claim. Section 7430 applies only to tax cases; therefore most of the applications for attorneys' fees under it would be to pay attorneys who have brought or defended tax cases. Such lawyers presumably all have a certain degree of "tax expertise." To suppose that Congress intended them all to be paid at a higher than $ 75 an hour rate would allow this "special factor" exception to swallow the $ 75 an hour rule. As "the 'special factor' formulation suggests, Congress thought that $ 75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be," Pierce [v. Underwood,] 487 U.S. at 572, * * * likewise, we believe that in the tax context of § 7430, the specialized market for tax lawyers is not usually relevant.
936 F.2d at 743; see Bode v. United States, 919 F.2d 1044, 1050 (5th Cir. 1990). We conclude that petitioner has not shown the presence of any special factor warranting an increase *226 in the $ 75 maximum hourly rate. b. Is the $ 75 Hourly Limit in Section 7430 Adjusted Because of Increases in the Cost of Living, and If So, From What Date
The $ 75 per hour rate may be adjusted for increases in the cost of living. Sec. 7430(c)(1)(A)(ii)(III). Under EAJA, the Third Circuit, to which this case is appealable, has allowed the cost of living adjustment dating from October 1, 1981, and awarded a litigant attorney's fees in excess of the $ 75 hourly rate, based on increases in the Consumer Price Index (CPI) from October 1, 1981 (the effective date of the first enactment of EAJA's $ 75 hourly cap). Pub. L. 96-481, sec. 204, 94 Stat. 2327, 2329, 2330 (1980); Allen v. Bowen, 821 F.2d 963, 967-968 (3d Cir. 1987); Natural Resources Defense Council v. EPA, 703 F.2d 700, 713 (3d Cir. 1983); accord Trichilo v. Secretary of Health & Human Services, 823 F.2d 702 (2d Cir. 1987); Sierra Club v. Secretary of the Army, 820 F.2d 513 (1st Cir. 1987); Hirschey v. F.E.R.C., 777 F.2d 1, 5 (D.C. Cir. 1985); cf. Chipman v. Secretary of Health & Human Services, 781 F.2d 545, 547 (6th Cir. 1986) *227 (Sixth Circuit only allows $ 75 rate to be adjusted for increase in costs of living since 1985, the date of EAJA's reenactment, Pub. L. 99-80, secs. 2, 6, 99 Stat. 184, 186). In a recent case we held that the October 1, 1981, date applied in EAJA cases applies to section 7430. Bayer v. Commissioner, 98 T.C. 19 (1992). That holding is controlling in this case. In Cassuto v. Commissioner, 93 T.C. at 272-273, we held that the $ 75 rate in section 7430 should be adjusted for increases in the CPI since October 1, 1981 (the effective date of the first enactment of EAJA's $ 75 an hour rate). H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 801-802. We reasoned that since section 7430(c)(1)(A) was amended in 1986 to "conform more closely to" EAJA, 28 U.S.C. sec. 2412(d)(2)(A), by providing a $ 75 hourly cap, with permissible cost of living adjustments, and since EAJA became effective October 1, 1981, section 7430 cost of living adjustments should begin at the same time as those of EAJA. Cassuto v. Commissioner, supra at 272-273. The Second Circuit reversed and held that the $ 75 rate should be indexed *228 for inflation from January 1, 1986, the date section 7430 was amended to provide a $ 75 rate of reimbursement and to permit cost of living adjustments. Cassuto v. Commissioner, 936 F.2d at 743. The Second Circuit stated: There is no evidence, however, that Congress intended to pre-date § 7430's new structure to the date of the EAJA. If that had been Congress' intent, it would have been easy for Congress to make this known, or to have simply calculated a cola from 1981 to 1986, and made that the new base hourly rate. Instead, rather than completely conforming the statutes, Congress has made clear its intent to separate the awarding of litigation costs in the tax area from the general civil area to which the EAJA applies. * * * Congress has thus set up two separate, albeit similar, fee award systems for tax and non-tax cases; the fact that they both contain a $ 75 an hour fee cap with colas cannot be read as an open invitation to transport wholesale the EAJA's cola commencement date to § 7430.
936 F.2d at 742-743. This Court is bound to similarly decide other cases if they are squarely in point and their venue for appeal is the Second *229 Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). However, since appeal of this case would be to the Court of Appeals for the Third Circuit, we will follow Bayer v. Commissioner, 98 T.C. 19 (1992). As we said in Lawrence v. Commissioner, 27 T.C. 713, 719-720 (1957): The Tax Court, being a tribunal with national jurisdiction over litigation involving the interpretation of Federal taxing statutes which may come to it from all parts of the country, has a similar obligation to apply with uniformity its interpretation of those statutes. That is the way it has always seen its statutory duty and, with all due respect to the Courts of Appeals, it cannot conscientiously change unless Congress or the Supreme Court so directs.
Accord Delta Metalforming Co. v. Commissioner, 632 F.2d 442, 445 n.4 (5th Cir. 1980), affg. T.C. Memo. 1978-354. We think the legislative history and the fact that Congress conformed section 7430's reimbursement limits to mirror those in EAJA show Congress intended the same EAJA hourly rate and indexing *230 to apply to section 7430. Under the holding of the Second Circuit, a lower hourly rate for attorney's fees would apply to tax litigation than to other civil litigation. On July 29, 1985, Senators Baucus and Grassley introduced The Small Business Tax Simplification and Taxpayer Protection Act, S. 1513, 99th Cong., 1st Sess. (1985). It contained several amendments to section 7430, which were later included in section 799 of the reconciliation bill for the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), S. Rept. 99-146, at 419 (1985), and in the Senate Finance Committee amendments to the Tax Reform Act of 1986, S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 198-199. In describing the amendments to section 7430, Senator Baucus explained that the $ 25,000 cap on reimbursable costs was to be replaced by limits on attorneys' hourly fees and experts' fees to be "in conformity with the EAJA system." Statement of Senator Baucus, 131 Cong. Rec. S 10275 - S 10276 (daily ed. July 29, 1985). Senator Grassley stated that "There is no reason to have inconsistency in attorney fees treatment." Statement of Senator Grassley, 131 Cong. Rec. S 10277 (daily ed. July 29, 1985). *231 Senator Baucus reiterated Congress' intent in amending section 7430 to conform to the EAJA standard: "Neither the old nor the new version of EAJA contained a cap. The current version of section 7430 does. Our amendment replaces the current $ 25,000 cap with a system like the EAJA system, which instead limits hourly attorneys' and experts rates." Statement of Senator Baucus, 131 Cong. Rec. S 15476 (daily ed. Nov. 14, 1985). We believe that Congress intended the rules governing the hourly limit for attorney's fees to be the same under section 7430 as under EAJA. Cost of living adjustments to the $ 75 limit are not automatic under EAJA or section 7430. If Congress in 1986 had increased the $ 75 limit in section 7430 because of inflation, then the hourly limit for tax cases would be higher, absent a decision by the Court to allow a cost of living adjustment. Our reading of the statute and legislative history is that Congress intended the hourly limit in section 7430 to be neither more generous nor more restrictive than in EAJA. This is accomplished if the cost of living adjustments under section 7430 are indexed from the date used under EAJA. As the Senate Finance Committee stated: *232 The committee believes that the provision allowing awards of attorney's fees should be continued but must be modified to provide greater consistency between the laws governing the awards of attorney's fees in tax and nontax cases. Specifically, the committee believes that the Equal Access to Justice Act provides the appropriate standards for awarding attorney's fees.
S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 198. The conference report to the Tax Reform Act of 1986, supra, shows that this Senate position was adopted: Senate Amendment
The Senate amendment modifies section 7430 to conform it more closely to the Equal Access to Justice Act. * * * * * * The Senate amendment eliminates the $ 25,000 cap on the award of attorney's fees and substitutes a $ 75 an hour limitation on attorney's fees, unless the court determines that a higher rate is justified. To make this determination, the court may look to an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys to deal with the particular issues involved in the case. As under prior law, only reasonable litigation costs are recoverable by the taxpayer. *233 * * * Conference Agreement
The conference agreement generally follows the Senate amendment, except as to the burden of proof. * * *
H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 801-802. It is true that Congress could have calculated a cost of living adjustment from 1981 to 1986 and made that the new base hourly rate. However, Congress purposely used existing EAJA language to conform the two. Thus, in amending section 7430 to add the new $ 75 hourly cap in lieu of the $ 25,000 cap, Congress adopted both the $ 75 figure and the existing cost of living adjustment language contained in EAJA. We think this shows Congress' intent to conform the amount of recovery under EAJA and the Internal Revenue Code. Therefore, we conclude that the cost of living increases date from October 1, 1981. Following the authority of the Third Circuit, we therefore will adjust the $ 75 hourly rate because of the increase in the cost of living. Allen v. Bowen, 821 F.2d 963, 967-968 (3d Cir. 1987); Natural Resources Defense Council v. EPA, 703 F.2d 700, 713 (3d Cir. 1983); see Hyatt v. Heckler, 807 F.2d 376, 383 (4th Cir. 1986) *234 (judicial notice taken of cost of living allowance to increase $ 75 hourly rate). As discussed in Cassuto v. Commissioner, 93 T.C. at 273, the CPI for all urban consumers (CPI-U) used 1967 as the standard reference base period. However, in Bayer v. Commissioner, T.C. Memo. 1991-282, modified 98 T.C. 19 (1992), we used 1982-84 as the standard reference base period because it is more current. The hours billed by petitioners' attorneys for which petitioners are entitled to be reimbursed were all rendered between September 1989 and August 1991. The hourly limit during these months ranges from $ 100.50 to $ 109.80. CPI Increase
Hours
Since 1981
Hourly Rate
Fees
September 1989
3.7
34.0
$ 100.50
$    371.85
October 1989
14.7
34.6
100.95
1,483.97
December 1989
25.0
35.2
101.40
2,535.00
April 1990
1.0
38.2
103.65
103.65
July 1990
25.5
39.8
104.85
2,673.68
April 1991
0.2
44.9
108.68
21.74
May 1991
12.2
45.3
109.00
1,329.80
August 1991
61.4
46.4
109.80
6,741.72
TOTAL
143.7
$ 15,261.41
5. Reasonableness of Petitioners' Litigation Costs
We next decide whether the amount *235 of petitioners' litigation costs were reasonable. Reasonable litigation costs include reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding. Sec. 7430(c)(1)(A). Petitioners bear the burden of proving the reasonableness of their costs. [2]Bayer v. Commissioner, T.C. Memo. 1991-282, modified 98 T.C. 19 (1992); Rule 232(e).
Petitioners request reimbursement for attorney's fees of $ 26,131.50 (143.7 hours of attorney time at $ 190 [3] per hour) plus miscellaneous costs in the amount of $ 2,010.20. Respondent raised no objection to the number of attorney hours claimed by petitioners. *236 Petitioners' claim includes legal fees which were incurred while their case was being considered at the examination and appeals levels, prior to the date of commencement of the civil proceedings (November 2, 1988). Respondent maintains that if the Court decides that petitioners are entitled to attorney's fees, they should be limited to the period in which respondent's position was not substantially justified. Cassuto v. Commissioner, supra. We allow only costs beginning on November 2, 1988, because that is the time at which we first consider whether respondent's position was substantially justified. In cases brought pursuant to section 7430 the taxpayer has the burden of proof. Rule 232(e). On this record, we believe expenditure of time by counsel to prepare and present petitioners' case to be reasonable. Petitioners' counsel billed 34.2 hours regarding work done preparing the stipulation and settlement of issues. As noted, we do not find this to be unreasonable. Petitioners' counsel billed 109.5 hours regarding work done preparing the motion for litigation costs. We also find this to be reasonable considering the detailed motion and affidavits submitted by petitioner. *237 Petitioners also seek reimbursement of $ 2,010.20 for other costs. The itemized billing shows $ 60 for filing the petition, $ 240.79 for LEXIS computer research, $ 1,541.20 for photocopying, $ 39.75 for postage, $ 41.51 for telephone, $ 10 for messenger service, $ 10 for travel, $ 21.75 for telecopy, $ 5 for meals, and $ 40.20 for overtime costs. [4]
Accordingly, we award petitioners attorney's fees in the amount of $ 15,261.41, and costs in the amount of $ 2,010.20. An appropriate order will be issued. Footnotes
1. This amount includes 12.8 accountant hours.↩
1. Before 1986 sec. 7430 required that respondent's position be "unreasonable" for a taxpayer to be eligible for an award of litigation costs. In 1986 Congress amended sec. 7430 by changing the "unreasonable" standard to a "not substantially justified" standard to conform that provision more closely to the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 4212 (1988). Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551, 100 Stat. 2752; Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); see S. Rept. 99-313, at 198 (1986), 1986-3 C.B. (Vol. 3) 198. The "substantially justified" standard is not a departure from the "reasonableness" standard. Sokol v. Commissioner, 92 T.C. 760, 764 n.7 (1989); Sher v. Commissioner, supra↩.In fact, the legislative history of EAJA indicates that the substantially justified test under that statute is essentially one of reasonableness. H. Rept. 96-1418 (1980).
2. In civil cases brought pursuant to the EAJA regarding claims for litigation costs, the Government bears the burden of proof. EAJA, Pub. L. 96-481, 94 Stat. 2325. See 5 U.S.C. sec. 504 (1988); 28 U.S.C. sec. 2412 (1988)↩.
3. Petitioners' counsel's hourly rate was $ 190 through most of the litigation, while the law firm associates billed at a lesser rate. We will use $ 190 as the hourly rate.↩
4. Respondent did not contest these itemized litigation costs. Therefore, we consider these amounts conceded. Schaefer v. Commissioner, T.C. Memo. 1991-426↩.