Isadore CASSUTO and Thalia Cassuto,
Petitioners–Appellees,
Cross–Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent–Appellant,
Cross–Appellee.

Nos. 271, 463, Dockets 90–4046, 90–4052.

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1990.

Decided June 26, 1991.

Kimberly S. Stanley, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Tax Div., Dept. of Justice, Gary R. Allen, Gilbert S. Rothenberg, of counsel), for respondent-appellant, cross-appellee.

Arnold Y. Kapiloff, New York City (Walker, Walker & Kapiloff, P.C., of counsel), for petitioners-appellees, cross-appellants.

Before VAN GRAAFEILAND and WALKER, Circuit Judges, and DEARIE, District Judge.[*]

WALKER, Circuit Judge:

Isadore and Thalia Cassuto appeal from a judgment of the United States Tax Court (Thomas B. Wells, *Judge*) that denied them attorneys' fees under 26 U.S.C. § 7430 for preparing a Petition in Tax Court disputing a Letter of Deficiency issued to them for the year 1981, while awarding fees for preparing similar Petitions for the years 1980 and 1982. Because we believe that the Tax Court did not abuse its discretion in finding the position of the Commissioner of Internal Revenue in his 1981 Notice of Deficiency to be substantially justified and that the Cassutos' position in their 1981 Petition did not substantially prevail in the settlement reached, we affirm the court's denial of attorneys' fees. We also reject the Cassutos' claim that the 1981 Petition was an "integral part" of their successful 1982 Petition, so as to warrant joining them together for fee recovery purposes.

The Cassutos also appeal from the Tax Court's determination that neither their lawyer's tax expertise nor the Commissioner's actions in prosecuting this case qualify as "special factors" which would warrant awarding attorneys' fees at a rate greater than $75 an hour. We believe that the Tax Court properly held that such factors do not constitute "special factors" in the context of 26 U.S.C. § 7430(c)(1)(B)(iii).

The Commissioner cross-appeals from the Tax Court's calculation of cost of living adjustments ("colas") from 1981, the effective date of the Equal Access to Justice Act ("EAJA"), in awarding attorneys' fees. Because we believe the court should have used 1986, the effective date of the cola provision of § 7430, we reverse that portion of the award which calculated from 1981, and remand to the Tax Court to recalculate such adjustments from 1986.

Affirmed in part, reversed in part, and remanded.

## BACKGROUND

In 1980 and 1981 Isadore and Thalia Cassuto invested $6,300 in Salisbury Traders, a limited partnership trading in government securities and commodities. In the years 1980 to 1981 investment interest expenses and capital losses from the partnership resulted in a net loss to the Cassutos, which they deducted from their individual income tax returns. In 1982, the partnership posted capital gains and investment income outweighing investment interest deductions, resulting in a reported net gain on the Cassutos' individual income tax return. In that same year, the partnership was dissolved. The following chart illustrates Salisbury Traders' income and expenses as reported on the Cassutos' tax returns for 1980, 1981 and 1982:

[*] United States District Judge for the Eastern District of New York, Sitting by Designation.

|  | 1980 | 1981 | 1982 |
|---|---|---|---|
| Investment Income | $ 256 | $29,464 | $80,703 |
| Investment Interest Expense | ($16,668) | ($30,781) | ($83,360) |
| Capital Gain (Loss) | ($ 357) | ($ 3,416) | $18,976 |
| Total Gain (Loss) | ($16,787) | ($ 4,733) | $16,319 |

The Commissioner audited the Cassutos' tax returns for the years 1980 through 1982, and concluded that, with minor exceptions, all income and expenses from Salisbury Traders should be discounted because the partnership's transactions were devoid of economic substance. The partners had no profit motive in entering into the transactions, the Commissioner claimed, and were not "at risk" within the meaning of § 465 of the Internal Revenue Code, codified at 26 U.S.C. § 465. The sole purpose for the partnership was to enable the partners to deduct its losses, the Commissioner claimed.

Accordingly, the Commissioner sent "examination reports" to the Cassutos on May 3, 1986 for the year 1981 and on December 3, 1986 for the years 1980 and 1982. These reports recalculated their returns without the income and expenses of Salisbury Traders. They specified tentative deficiencies of $6,828 for 1980 and $653 for 1981, and an overpayment of $2,985 in 1982—resulting in a net deficiency for all three years of $4,496.

In August 1986 the Cassutos filed a protest against the 1980 examination letter. However, upon hearing that other Salisbury Traders partners were settling their cases with the Commissioner's agents in Florida, they contacted these agents in September 1986 about settling their case as well. When they were told that the Commissioner's New York office was handling their case, and it could not be joined with the other cases in Florida, the Cassutos contacted the Holtsville, New York office. That office told them to wait to discuss matters until the office contacted them.

In April 1987, an employee from the Holtsville office called the Cassutos. The Cassutos informed her of their desire to settle the case, and a tentative settlement was worked out whereby the Cassutos would pay the deficiencies noted on the examination reports, except that they would be entitled to a deduction for actual out-of-pocket-cash losses from Salisbury Traders. Several weeks later, the employee called the Cassutos and told them there was a "problem" with the statute of limitations for the 1980 return, in that the Commissioner did not have an extension from the Cassutos for the statute of limitations for 1980 on file. The Cassutos did not hear from that employee again.

Instead, on June 15, 1987, the Commissioner sent the Cassutos a "Notice of Deficiency" for the year 1981 in the amount of $653—the same amount for that year noticed in the earlier examination letter. On July 29, 1987, the Commissioner informed the Cassutos in a letter that the statute of limitations had expired for adjustments to their 1980 return, and that no further liability existed for that return only.

However, on August 27, 1987, the Cassutos received Notices of Deficiency for the years 1980 and 1982. The 1980 Notice claimed a deficiency of $6,840, which was close to the $6,828 noticed in the examination report previously received. The 1982 Notice claimed a deficiency for the year of $41,591, which it derived by disallowing all interest expense deductions attributable to Salisbury Traders for the year, but allowing all income and capital gains purportedly realized from that entity as individual income. This Notice did not track the 1982 examination report, which, by contrast, had discounted both expenses and income attributable to Salisbury Traders and had specified a $2,985 refund to the Cassutos.

The Cassutos filed Petitions in Tax Court challenging each of these Notices. In a September 11, 1987 Petition attacking the 1981 Notice, they claimed that the Commissioner erred in determining that the transactions documented from Salisbury Traders

were shams, and that they were not "at risk" within the meaning of § 465. The Cassutos claimed that in fact they owed no deficiency, and were entitled to deduct expenses and include income from Salisbury Traders on their 1981 return. On November 18, 1987, they challenged the 1980 and 1982 Notices of Deficiency, in two separate Petitions. The 1980 Petition criticized the 1980 Notice on alternate grounds: first, that the three year statute of limitations for assessment of tax under 26 U.S.C. § 6501(a) had expired, because the Cassutos had not extended the statute of limitations in a written document with the Commissioner; and second, that their Salisbury investment was genuine, not tax motivated, and that therefore their income and expenses from the partnership should be allowed. The 1982 Petition attacked the 1982 Notice also on alternate grounds: first, that the Commissioner erred in disallowing investment interest expense from Salisbury

Traders of $83,360; and second, that if indeed the Commissioner should choose to disallow Salisbury Traders' expense deductions, he must also disregard the $99,679 in investment income and capital gain the partnership generated. If the partnership were truly to be considered a sham, and null and void, the Cassutos argued, they were in fact entitled to the $2,985 refund specified in the previously issued examination report for 1982, because they had paid taxes based on receiving more income from the partnership than they took in deductions from it.

On November 22, 1988, the parties settled the disputed deficiencies. The Cassutos agreed to pay a $4,684 deficiency for the year 1981, but none for 1980 and 1982.

The deficiencies identified in the examination reports, in the Notices of Deficiency, and in the eventual settlement can be summarized as follows:

| *Year* | *Examination Report* | *Notice of Deficiency* | *Settlement* |
|---|---|---|---|
| 1980 | $6,828 | $ 6,840 | $0 |
| 1981 | $ 653 | $   653 | $4,684 |
| 1982 | ($2,985)(refund) | $41,591 | $0 |
| Total | $4,496 | $49,084 | $4,684 |

On December 23, 1988, the Cassutos filed a Motion for Award of Reasonable Litigation Costs under 26 U.S.C. § 7430. In a decision dated August 28, 1989, Judge Wells of the Tax Court awarded the Cassutos reasonable attorneys' fees for the years 1980 and 1982. He held that the Commissioner's position in his Notices of Deficiency for those years was not substantially justified, because the statute of limitation had expired for the 1980 return, and because the 1982 Petition, while discounting expense deductions from Salisbury Traders nevertheless included income from its "sham" partnership transactions in calculating a $41,591 deficiency. The court also held that the Cassutos' positions as set out in the 1980 and 1982 Petitions had "substantially prevailed" as to the amount of tax due, based on the settlement amounts

reached for those years. As for 1981, he held that the Commissioner's position for that year was substantially justified because the Notice of Deficiency disallowed both income and expenses from Salisbury Traders—the position adopted by both sides in the settlement. He also held that the Cassutos had not substantially prevailed on the amount due for that year, because they had argued in their Petition that they owed no tax, when in fact they settled by paying $4,684 for that year. Therefore he denied the Cassutos attorneys' fees for the year 1981.

In calculating the amount of the Cassutos' fee award, Judge Wells awarded them attorney time at $75 an hour, the hourly rate set out in 26 U.S.C. § 7430(c)(1)(B)(ii)(iii)[1], and made colas to

---

**1.** 26 U.S.C. § 7430(c)(1)(B) defines "reasonable litigation costs" as including:

(B) based upon prevailing market rates for the kind or quality of services furnished—

.   .   .   .   .

that rate starting from the year 1981, resulting in a $91 an hour rate for attorney time expended in 1988, $95 an hour for 1988, and $100 an hour for 1989. Although § 7430 was not amended to allow for colas to a mandatory $75 an hour rate until 1986, Judge Wells calculated the colas from 1981. He reasoned that since § 7430 was amended in 1986 in order to conform more closely to the EAJA, 28 U.S.C. § 2412, by setting forth a standard $75 an hour rate, with permissible colas, and the EAJA became effective in 1981, § 7430 colas should begin at the same point in time as those of the EAJA.

Judge Wells refused, however, the Cassutos' request for attorney fee reimbursement at a rate higher than $75 an hour plus colas. The Cassutos argued that their need to retain a "knowledgeable tax specialist with special skills in the litigation of tax cases" who charges more than $75 an hour qualified as a "special factor" under § 7430(c)(1)(B)(iii) which would justify a higher rate, and also that the Commissioner's improper conduct in bringing the suit in the first place was such a factor. Judge Wells rejected these arguments.

The Cassutos and the Commissioner both appealed from the Tax Court's decision. The Cassutos challenge that portion of the decision that denied them attorneys' fees for the preparation of their 1981 Petition. They also appeal Judge Wells' finding of no "special factors" that would justify a higher fee award. The Commissioner appeals from that portion of the award that calculates colas from 1981, instead of 1986.

## DISCUSSION

### A. *Standard of Review*

◼ Generally, we review a trial court's decision whether to award attorneys' fees to a prevailing party, and in what amount, under an abuse of discretion standard. *See Pierce v. Underwood*, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101

L.Ed.2d 490 (1988); *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). This standard also governs our review of the court's determination of whether the government's position in the litigation was substantially justified. *See Pierce*, 487 U.S. at 557–63, 108 S.Ct. at 2545–49 (requiring abuse of discretion review on this point for the analogous EAJA "substantially justified" standard). We review *de novo*, however, the tax court's purely legal determination of whether § 7430's cost of living adjustments should be dated from the enactment of the EAJA, or of § 7430 itself. *See Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (abuse of discretion standard for imposition of Rule 11 sanctions, except for "correction of district court's legal errors"); *see also Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (applying *de novo* review to pure legal question of whether Rule 11 sanctions may be imposed on an attorney's law firm).

### B. *Attorneys' Fees for the 1981 Petition*

◼ The Cassutos argue that, in addition to their fee award for the 1980 and 1982 Petitions, they should be awarded fees for time spent preparing the 1981 Petition. We do not agree.

26 U.S.C. § 7430 provides that a prevailing party (other than the United States or another creditor of the taxpayers) in a Tax Court proceeding may be awarded reasonable litigation costs. Section 7430(c)(4)(A) defines "prevailing party" as one:

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented,

.     .     .     .     .

(iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the

court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

This circuit has defined "the position of the United States" for purposes of § 7430(c)(4)(A)(i) as the position taken by the Commissioner in a statutory Notice of Deficiency sent to the taxpayer, even if the Commissioner changes its position during the actual adversary proceedings when the Commissioner's District Counsel becomes involved. *Weiss v. Commissioner*, 850 F.2d 111, 115–16 (2d Cir.1988). The term "substantially prevailed" in § 7430(c)(4)(A)(ii) can be reasonably interpreted to refer to the final outcome of the case—whether by court judgment or settlement. Indeed, this is the interpretation given the term by Judge Wells, who looked to see if the Cassutos had substantially prevailed in the positions adopted in their Petitions by comparing these with the settlement amount reached for each year. Therefore, in assessing whether the Tax Court erred in holding that the Cassutos should not receive fees for the time spent preparing the 1981 Petition, we must decide whether the court abused its discretion in determining that 1) the Commissioner's position in the Notice of Deficiency for 1981 was substantially justified, and 2) the Cassutos' position in the 1981 Petition did not substantially prevail in the final settlement.

We believe that Judge Wells did not abuse his discretion in making these determinations. The Commissioner's position in the 1981 Notice of Deficiency was that both income and expenses from Salisbury Traders should be ignored, resulting in a deficiency of $653. This position was substantially justified in that both parties implicitly agreed, in the settlement, that the Salisbury Traders transactions were essentially devoid of economic substance, and should be disregarded as "sham" transactions. The Cassutos' assertion in their 1981 Petition that the Salisbury Traders transactions should be acknowledged and that no tax was due for the year was not embodied in the final settlement, in which the Cassutos agreed to pay $4,684; therefore they cannot be said to have "substantially prevailed" for that year.

The Cassutos argue, however, that because their response to the 1981 Notice of Deficiency was an "integral part" of their defense against the improperly filed 1982 Notice, they should be awarded fees for the preparation of that Petition despite the above. The Cassutos claim that they could best highlight the inconsistency and absurdity of the Commissioner's decision to recognize Salisbury Traders' income while disregarding Salisbury Traders' expenses in 1982 by pointing out to the Tax Court the Commissioner's position in the years 1980 and 1981 in which he refused to acknowledge income and expenses from the "sham" partnership. The only effective way to make this point to the court, the Cassutos argue, was to file petitions for those years as well. Therefore the time spent preparing for the 1981 Petition was an integral part of their successful challenge to the improperly filed 1982 notice. We reject this argument.

The Cassutos were able to point out the inconsistency between the Commissioner's position in his 1982 Notice of Deficiency and his position in the 1980 and 1981 Notices in their 1982 Petition itself, and did so. That Petition recites the entire history of the Commissioner's treatment of Salisbury Traders, and points out the novelty of the Commissioner's recognition of the partnership's income in his 1982 Notice. If the Cassutos wished to underscore or substantiate the sudden change in the Commissioner's position, they could have attached the previous Notices of Deficiency as exhibits to their 1982 Petition. There was no substantial need to respond to the 1981 Notice simply in order to point out the 1982 Notice's contrary position.

In any event, the Cassutos' 1981 Petition as submitted did not serve the function they now attribute to it. Their 1981 Petition is not a plea for consistency between the Commissioner's Notices of Deficiency for the years 1980 and 1982. It is a straightforward challenge to the Commissioner's determination that the Salisbury Traders transactions were purely tax motivated, and thus should be discounted. The Petition asserts that the Commissioner erred in discounting Salisbury Traders' in-

come and expenses, and states that in fact no deficiency is due for 1981. That is, the 1981 Petition takes the position that the Salisbury Traders transactions were bona fide, unlike the 1982 Petition, which argues, successfully, that the Salisbury Traders transactions should be ignored.

The Cassutos' reliance on *Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211 (D.C.Cir.1984) therefore is unavailing. In that case, plaintiffs brought a 1979 suit alleging that Civil Aeronautics Board regulations on smoking on passenger airplanes were inadequate to protect the rights of non-smoking passengers. In response to plaintiffs' challenge, the Board withdrew the regulations, but two years later issued regulations which afforded even less protection to non-smokers than those originally challenged. Plaintiffs then challenged the later regulations, and they were vacated. Plaintiffs sued for attorneys' fees for both their 1979 and 1981 challenges. The District of Columbia Circuit awarded them fees for both years, noting that the 1979 challenge, although never technically resolved, and the 1981 suit " 'involve[d] a common core of facts,' " were " 'based on related legal theories,' " were " 'part and parcel of a single matter,' " 724 F.2d at 216, and should be considered together in awarding fees.

The Cassutos' 1981 and 1982 Petitions, however, neither put forth the same version of the facts, nor argued a related legal theory. The theory of the prevailing 1982 Petition—that both expenses and income from Salisbury Traders should be disregarded—was not set forth in the 1981 Petition. The two Petitions were unified only in espousing an alternate theory, which did not prevail, that Salisbury Traders transactions should be given credence, and that no tax therefore was owed. The 1981 Petition was not "part and parcel" of the winning argument in the 1982 Petition. The time spent preparing it therefore is not reimbursable.

### C. The Applicable Cost of Living Adjustment to the $75 an Hour Rate

■ The Commissioner argues on appeal that the Tax Court erred in dating colas to the $75 an hour rate for attorneys' fees from 1981, the date the EAJA became effective, instead of from 1986, when § 7430 first allowed for colas to a $75 hourly fee rate. We agree.

In dating § 7430 colas from 1981, the Tax Court stated that it was following both Congress' desire to conform the EAJA and § 7430, and this circuit's decision in *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702 (2d Cir.1987), which held that colas under the EAJA should be dated from 1981, the date the EAJA originally became effective, instead of 1985, the date of its reenactment after the first statute expired of its own accord. We believe, however, that the Tax Court overstated both precedents.

Congress clearly intended § 7430 to follow the same fee structure as the EAJA when it amended the statute in 1986 to "conform ... more closely to the Equal Access to Justice Act." H.R.Conf.Rep. No. 841, 99th Cong.2d Sess. Before that time, § 7430 set forth no hourly fee reimbursement rate, but allowed simply for a maximum award of $25,000 in undifferentiated litigation costs. The 1986 amendment established the $75 an hour fee rate, and allowed courts to subsequently add colas to that rate. There is no evidence, however, that Congress intended to pre-date § 7430's new structure to the date of the EAJA. If that had been Congress' intent, it would have been easy for Congress to make this known, or to have simply calculated a cola from 1981 to 1986, and made that the new base hourly rate. Instead, rather than completely conforming the statutes, Congress has made clear its intent to separate the awarding of litigation costs in the tax area from the general civil area to which the EAJA applies. For example, the EAJA specifically does not apply to tax cases; the statute defers to § 7430 "in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1954 applies" 28 U.S.C. § 2412(e). Also, § 7430 puts the burden on taxpayers to show that the position of the government was "not substantially justified," whereas the EAJA authorizes courts to award costs to prevail-

ing parties unless the court finds that the position of the United States *"was* substantially justified," *see* 26 U.S.C. § 7430(c)(4)(A)(i); 28 U.S.C. § 2412(d)(1)(A) (emphasis added), thus making it more difficult for Tax Court litigants to win fee awards than for other civil litigants. Taxpayers seeking fees under § 7430 must also show that they have exhausted all administrative remedies prior to commencing litigation, whereas the EAJA carries no similar requirement. *See* § 7430(b)(1). Congress has thus set up two separate, albeit similar, fee award systems for tax and non-tax cases; the fact that they both contain a $75 an hour fee cap with colas cannot be read as an open invitation to transport wholesale the EAJA's cola commencement date to § 7430.

Nor does our decision in *Trichilo* require such a result. The 1985 reenactment of the EAJA changed nothing in the statute and was mandated by the 1981 Act's "sunset clause" which caused the Act to expire of its own accord. *Trichilo* merely held that because the 1985 reenactment was intended to restore the 1981 Act "as if [it] had not been repealed," colas to EAJA awards made after 1985 should be dated from 1981, when the $75 an hour fee structure with colas was first introduced. *Trichilo*, 823 F.2d at 706. The decision dealt specifically with the unique history and intent of the EAJA's 1985 reenactment and did not address the question of whether *other* statutes should use the EAJA's effective date in calculating their colas.

Putting aside, therefore, the Tax Court's erroneous determination that the starting date for the colas should be 1981, we are still left with the question of whether the starting date for colas should be 1983, when § 7430 first became effective, or 1986, when the $75 an hour reimbursement rate was fixed and colas permitted. Colas are to be calculated, generally, "with reference to the date on which [the statute] became effective ..." *Parks v. Bowen*, 839 F.2d 44, 46 (2d Cir.1988); *Wells v. Bowen*, 855 F.2d 37, 43 (2d Cir.1988). Although § 7430 first became effective in 1983, it did not allow for colas until 1986. We believe, therefore, that these adjustments should be calculated as of 1986, not 1983, because § 7430's 1986 amendment, unlike the 1985 EAJA reenactment, did not restore the 1983 § 7430 as if it had not been repealed, but substantially altered the statute's method of awarding and calculating fees. It established the $75 an hour fee structure with future colas in place of the previous $25,000 undifferentiated total fee cap. Because the concept of awarding colas was not in place until 1986, we decline to recognize an earlier starting date.

## D. *"Special Factors"*

■ We address, finally, the Cassutos' contention that the tax expertise of their lawyer, and the Commissioner's improper behavior in issuing the 1980 and 1982 Notices of Deficiency are "special factors" which justify fee reimbursement of more than $75 an hour, and that Judge Wells erred in not recognizing these factors. We reject this argument, finding that Judge Wells did not abuse his discretion in finding no "special factors" warranting higher fee reimbursement.

The Cassutos' contention that their attorney's "tax expertise" warrants awarding of fees at a rate higher than $75 an hour makes little sense in the context of their § 7430 reimbursement claim. Section 7430 applies only to tax cases; therefore most of the applications for attorneys' fees under it would be to pay attorneys who have brought or defended tax cases. Such lawyers presumably all have a certain degree of "tax expertise." To suppose that Congress intended them all to be paid at a higher than $75 an hour rate would allow this "special factor" exception to swallow the $75 an hour rule. As "the 'special factor' formulation suggests, Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be," *Pierce*, 487 U.S. at 572, 108 S.Ct. at 2554; likewise, we believe that in the tax context of § 7430, the specialized market for tax lawyers is not usually relevant.

The Cassutos further contend that the Commissioner's improper behavior in issu-

ing the Notice of Deficiency, which "forced" the Cassutos to settle the case for an amount which includes the tax deficiency for 1980, a time-barred year, constitutes a "special factor." We note, however, that the Commissioner's conduct has already been taken into account by the Tax Court's determination that his positions in the 1980 and 1982 Notices was "not substantially justified." The justification, or lack thereof, for the Commissioner's position is a threshold question that must be first examined to determine whether a litigant even has a case for fees under § 7430. To also qualify this query as a "special factor" in the calculation of the amount of the fee award is inappropriate; otherwise a "special factors" analysis would amount to a vehicle for assessing punitive damages—a notion that receives no support in the structure or language of the statute. We therefore reject this contention.

Affirmed in part, reversed in part, and remanded for recalculation of colas in accordance with this opinion.