# United States Court of Appeals
# for the Federal Circuit

---

**STARRY ASSOCIATES, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

**INTELLIZANT, LLC,**
*Defendant*

---

2017-2148

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00044-EGB, Senior Judge Eric G. Bruggink.

---

Decided: June 22, 2018

---

LARS ERIC ANDERSON, Odin, Feldman & Pittleman, PC, Reston, VA, argued for plaintiff-appellee. Also represented by SHIVA S. HAMIDINIA; JAMES Y. BOLAND, Venable LLP, Tysons Corner, VA.

ALEXIS J. ECHOLS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also

represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

————————————

Before O'MALLEY, LINN, and HUGHES, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

The sole issue in this appeal is the meaning of the term "special factor" in 28 U.S.C. § 2412(d)(2)(A), a subsection of the Equal Access to Justice Act ("EAJA"). When a trial court finds that a "special factor" exists, it is authorized to increase the statutory attorney fee rate in certain cases brought by or against the government.

In this case, the United States Court of Federal Claims ("Claims Court") entered judgment in favor of Plaintiff-Appellee Starry Associates, Inc. ("Starry") on its bid protest claim, concluding that the Department of Health and Human Services ("HHS") acted arbitrarily and capriciously in cancelling its solicitation seeking to procure certain business operations services. *Starry Assocs., Inc. v. United States* (*Merits Decision*), 127 Fed. Cl. 539 (2016). The Claims Court thereafter awarded Starry attorney fees at the rates actually billed to Starry by its counsel, finding that the "extreme measures that [Starry] was forced to pursue to vindicate its right to a rational and lawful federal procurement process, combined with the shocking disregard of the truth by" HHS, constituted a "special factor" justifying an award of fees above the EAJA's "default rate" of $125 per hour. *Starry Assocs., Inc. v. United States* (*Fees Decision*), 131 Fed. Cl. 208, 215 (2017).

We hold that the Claims Court erred as a matter of law in holding that an agency's improper or dilatory conduct during the administrative process that gave rise to the litigation between the parties can constitute a "special factor" under § 2412(d)(2)(A). Accordingly, we

vacate the Claims Court's fee award and remand for further proceedings.

## I. BACKGROUND

### A. The Bid Protests

None of the material facts are in dispute. On November 13, 2014, HHS's Program Support Center ("PSC") issued a Request for Quotations ("solicitation" or "RFQ"), seeking to procure business operations services that would support PSC's implementation of HHS's Unified Financial Management System ("UFMS"). *Merits Decision*, 127 Fed. Cl. at 540. The RFQ was set aside for small businesses and was to be awarded to the lowest priced, technically acceptable offeror. *Id.* Starry was the incumbent provider of on-site operational support for UFMS. *Id.*

Because UFMS is built on Oracle software, the RFQ required key personnel to have experience with that software, as well as with UFMS. *Id.* HHS was also looking for expertise regarding several of its other systems that worked in coordination with UFMS: the Managing Accounting and Credit Card System ("MACCS"), a system for accounting purchases made by government credit card holders, and GovNet–NG, a reporting system used to distribute operational reports. *Id.* Both are proprietary systems developed by Starry. *Id.* at 540–41.

Three companies timely submitted quotations, with Defendant Intellizant, LLC ("Intellizant") offering the low-priced bid. *Id.* at 541. It was therefore evaluated for technical acceptability along with past performance and certain statutory compliance. *Id.* HHS thereafter convened a three-person Technical Evaluation Panel ("TEP") which, after reviewing Intellizant's proposal for only two or three days, reached a mixed evaluation. *Id.* at 541–42. Two of the three members found Intellizant acceptable for all factors, while the third rated the company technically

unacceptable. *Id.* at 542. Of the two members who found the proposal acceptable, one noted that several pieces of information were missing, while the other "found no problems with Intellizant's proposal" and expressly relied on "[p]revious experience with the contractor" in making her determination. *Id.* The Contracting Officer ("CO") then evaluated the proposal and determined that Intellizant was technically acceptable. *Id.*

Starry, which submitted a more expensive proposal that was not evaluated, was notified of the award, and filed its first protest at the Government Accountability Office ("GAO"). *Id.* at 544. It alleged that HHS's evaluation of Intellizant was unreasonable because of the company's lack of experience with the contract requirements and lack of qualified key personnel. HHS thereafter informed GAO and Starry of its intent to take corrective action, explaining that it did "not intend to reevaluate the requirement or solicit new proposals." *Id.* Instead, it intended to thoroughly review the file and ensure the evaluation was complete and accurate. *Id.* GAO dismissed Starry's protest as academic, and Starry, believing the scope of this corrective action was insufficient, sent a letter to the clerk of court for the Claims Court, stating it intended to file a bid protest. *Id.* In response, the CO sent Starry a letter indicating that HHS would reevaluate proposals and make a new award decision. *Id.* Starry subsequently withdrew its notice of intent to protest. *Id.*

Although the TEP's second evaluation lasted months and culminated in the issuance of a new report, virtually no contemporaneous documentation of the panel's decision-making process exists. *Id.* The panel was again unable to reach a consensus, with the same member again rating Intellizant as technically unacceptable. *Id.* The other panel member who initially listed concerns with the proposal did not have any reservations this go around. *Id.* And, again, the CO agreed with the majority's evaluation

and found Intellizant to be technically acceptable, and notified the relevant parties of that result. *Id.*

Starry filed a second protest at the GAO, reasserting its prior challenges and further claiming that John Davis, who served as Accounting Services Division Manager at PSC, was biased in favor of Intellizant due to his employment with the company immediately prior to joining HHS, and tainted the procurement by exerting undue influence over the TEP. *Id.* GAO held a hearing, took testimony from Davis and the CO, and sustained the protest in part and denied it in part, finding that the CO failed to evaluate either whether Intellizant's personnel could perform the relevant tasks or whether Intellizant could provide the necessary personnel to meet the solicitation's requirements. *Id.* at 545–46. GAO found that Starry's allegations of bias were "without merit" based on Davis's sworn testimony that he had recused himself from the procurement process. *Id.* at 546. It recommended reevaluation of the proposal and provided that, if HHS found Intellizant to be lacking, it must terminate the award and evaluate the next-in-line offeror. *Id.*

Patrick Joy, the interim head of contracting activity at PSC, later testified that he was notified by HHS counsel after the hearing that the agency was likely to lose the protest, and that Davis "raised the possibility of revising the RFQ to drop from the solicitation the awardee's need to support GovNet and MACCS," the areas in which Intellizant had been marked as deficient. *Id.* According to this testimony, Joy instructed Davis not to take any action with regard to the solicitation prior to a GAO decision. *Id.* After GAO issued its decision, counsel for HHS sent an email to Joy, the CO, and others, stating that GAO's recommendations were not mandatory and that alternatives included "canceling the solicitation and competing under a new vehicle [or] amending the [request for production] and soliciting new [offers] under the current vehicle." *Id.* Email records and deposition testi-

mony revealed that Davis was involved in the decision-making process, and that Joy left Davis the power to decide whether to cancel the solicitation. *Id.* Davis later emailed Joy with his decision to cancel the RFQ, stating that he had instructed his staff to "review and revise, where needed, a few of our support contracts" for UFMS. *Id.* at 546–47. Throughout this process, Davis provided conflicting accounts as to why he believed that an RFQ calling for compatibility with GovNet and MACCS was not required. *Id.*[1]

Six days after Davis emailed Joy with his decision to cancel the RFQ, counsel for HHS informed GAO and Starry that it intended to cancel the solicitation rather

---

[1]     The CO Representative testified that he prepared the Performance Work Statement for the current RFQ, and that Davis "highly recommended" that the representative "recuse himself from the TEP due to his involvement with the incumbent [Starry] contract." *Id.* at 541. The witness also testified that, after Starry's first protest, he offered once again to be part of the TEP, but that Davis told him that it "would not look good." *Id.* According to this witness, the TEP was made up of individuals selected by Davis. *Id.* He also testified that Davis, on several occasions, asked him to give Starry negative feedback and instructed him to prepare for a change in vendor. *Id.* Moreover, Davis stated that he should be replaced on the TEP by the member who previously worked with Intellizant and rated its proposal as "exceptional" in every category. *Id.* at 541–42. This TEP member was cleared by the CO after being questioned by the member who gave Intellizant's proposal a negative review. *Id.* at 542. She forwarded the CO's approval to Davis with the following encapsulation: "FYI—no more concerns," followed by a smiley face emoticon. *Id.* Davis replied asking her to call him on his cell phone. *Id.*

than reevaluate Intellizant, stating "it has been determined that two of the three systems proposed to be supported under the instant procurement were included in the solicitation by error." *Id.* at 548. Starry then filed its third bid protest, arguing that HHS's decision to cancel the solicitation was merely a pretext so that Davis could secure future work for Intellizant. *Id.* It claimed that Davis decided to eliminate the requirements of the solicitation as to which Intellizant was unqualified and later to re-solicit the remaining work in order to avoid GAO's earlier recommendation to reevaluate, which Starry believed would have resulted in it winning the original procurement. *Id.* GAO denied the protest by written decision, finding that the agency's proffered rational for cancellation was reasonable—even crediting the allegations of bias, the result was not affected, in GAO's view, because the "cancellation was otherwise reasonably justified." *Id.*

## B. The Claims Court's Merits Decision

Starry filed suit against the government in the Claims Court on January 11, 2016. On July 15, 2016, the Claims Court issued a decision granting Starry's motion for judgment on the administrative record. S*ee generally id.* at 539. It concluded that HHS acted irrationally in its decision to cancel the award based on its purported revision of its needs vis-à-vis MACCS and GovNet support, as it did not provide sufficient support for its decision. *Id.* at 548–49. The Claims Court did not reach the issue of whether the procurement was prejudicially tainted by bias. *Id.* at 548.

The Claims Court did, however, express dissatisfaction with the conduct of HHS and certain of its employees, including statements such as (1) "[a]nother instance of a cavalier disregard for the truth of representations made to the GAO was Mr. Davis' assurance that he was recused from the procurement process," *id.* at 549; (2) "Mr. Joy

and his colleagues accepted [Davis's] representation at face value in short order and conducted no independent analysis of the agency's needs," *id.*; and (3) Davis's "deposition leaves no question, however, that the rationale was completely illusory," *id.* The Claims Court determined that injunctive relief was appropriate under this court's decision in *PGBA, LLC v. United State*s, 389 F.3d 1219, 1228–39 (Fed. Cir. 2008), set aside the cancellation of the RFQ, and required HHS to reevaluate Intellizant's offer without any involvement from Davis, the CO, or the TEP member who twice found no problems with Intellizant's proposal. *Merits Decision*, 127 Fed. Cl. at 550.

## C. The Claims Court's Fees Decision

Starry thereafter moved for an award of attorney fees and other costs pursuant to § 2412(d) of the EAJA. *Fee Order*, 131 Fed. Cl. 208. The Claims Court held that, because the government was not substantially justified in its conduct throughout the procurement process, including its defense of that conduct in this lawsuit, Starry was entitled to an award of fees and costs. *Id.* at 212–13. It also held that, given the "egregious" nature of HHS's failures throughout the procurement process and the time and resources necessary for Starry to vindicate its rights, Starry was entitled to an upward adjustment of the statutorily-set hourly rate under § 2412(d)(2)(A)'s "special factor" exception. *Id.* at 213–15. In so holding, the Claims Court rejected the government's argument that egregious agency misconduct does not constitute a "special factor."

The government appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

"Congress enacted EAJA . . . in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions

and administrative proceedings brought by or against the Federal Government.'" *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96–1005, at 9 (1980)). "Among other reforms, EAJA amended 28 U.S.C. § 2412, which previously had authorized courts to award costs, but not attorney's fees and expenses, to prevailing parties in civil litigation against the United States." *Id.* "EAJA added two new prescriptions to § 2412 that expressly authorize attorney's fee awards against the Federal Government." *Id.* "First, § 2412(b) made the United States liable for attorney's fees and expenses 'to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.'" *Id.* "Second, § 2412(d) rendered the Government liable for a prevailing private party's attorney's fees and expenses in cases in which suit would lie only against the United States or an agency of the United States." *Id.* at 406–07. Because Starry made its fee request solely under the second of these provisions—§ 2412(d)—and not under § 2412(b), it is that provision we consider in this appeal. More particularly, we consider whether the Claims Court erred as a matter of law in concluding that egregious misconduct by HHS constitutes a "special factor" under § 2412(d)(2)(A). *See Haggart v. Woodley*, 809 F.3d 1336, 1354 (Fed. Cir. 2016) (explaining that, although we review determinations of reasonable attorney fees for abuse of discretion, "errors of law in the award of attorney fees are corrected without deference" (citations omitted)).

For the reasons explained below, we conclude that egregious agency misconduct is not a "special factor" under § 2412(d)(2)(A). This conclusion finds support in the plain language of the provision when considered in light of the statutory structure as a whole, its purpose and legislative history, and decisions from other circuits.

## A. Plain Language and Context

"As in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation marks and citation omitted). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (citation omitted)). We also "must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, — U.S. —, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). This is because statutory "[a]mbiguity is a creature not [just] of definitional possibilities but [also] of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

Section 2412(d) provides, in relevant part:

(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

. . . .

(2) For the purposes of this subsection—

> (A) "fees and other expenses" includes . . . reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees *shall not be awarded in excess of $125 per hour unless* the court determines that an increase in the cost of living *or a special factor*, such as the limited availability of qualified attorneys for the proceedings involved, *justifies* a higher fee.) . . . .

28 U.S.C. § 2412(d) (emphases added).

According to the plain language of § 2412(d), plaintiffs who prevail in cases brought against the government are entitled to "fees and other expenses," in addition to costs, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1)(A). In other words, plaintiffs can receive attorney fees under § 2412(d) only if the government advances a position that is *not* "substantially justified." Here, the government does not contest the Claims Court's finding that its position was not substantially justified—indeed, there is no dispute that Starry is entitled to attorney fees under § 2412(d)(1)(A).

Rather, the parties contest the *amount* of fees Starry can be awarded under § 2412(d)(2)(A). This provision explains what "fees and other expenses" can be recovered "[f]or the purposes of this subsection." According to this subsection, "fees and other expenses" include both "reasonable expenses" and "reasonable attorney fees." *Id.* § 2412(d)(2)(A). The subsection also contains a parenthetical mandating that "[t]he amount of fees awarded under this subsection *shall* be based upon *prevailing market*

*rates* for the kind and quality of the services furnished," subject to two exceptions. *Id.* (emphases added). The first of these exceptions concerns the compensation of expert witnesses, which is not relevant to this case. *Id.* § 2412(d)(2)(A)(i). The second exception commands that "attorney fees *shall not be awarded in excess of $125 per hour unless* the court determines that an increase in the cost of living *or a special factor*, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* § 2412(d)(2)(A)(ii) (emphases added).

The plain language of § 2412(d)(2)(A) does not authorize trial courts to award fees at a rate exceeding $125 per hour based on government misconduct during the administrative process that gave rise to the litigation; indeed, the text of the provision does not contain *any* reference to prelitigation activities. Instead, the text of the subsection authorizes an upward departure from the statutory rate in one of the two defined circumstances: where an increased cost of living or a "special factor" justifies a higher fee. Because it is undisputed that Starry is entitled to a cost-of-living adjustment in this case, the question we must answer is whether egregious government misconduct prior to the litigation or defense of that conduct once in litigation constitutes a "special factor" within the meaning of the EAJA.

The Supreme Court examined the meaning of § 2412(d)(2)(A)'s "special factor" exception in *Pierce v. Underwood*, 487 U.S. 552 (1988), paying particular attention to the single example of such a factor recited in the statute: the "limited availability of qualified attorneys for the proceedings involved." *Id.* at 571–74. The Court began by recognizing that, "[i]f 'the limited availability of qualified attorneys for the proceedings involved' meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate" the $125 per hour cap, "since the 'prevailing market

rates for the kind and quality of the services furnished' are obviously determined by the relative supply of that kind and quality of services." *Id.* at 571 (footnote omitted). It then stated that "'[l]imited availability' so interpreted would not be a 'special factor,' but a factor virtually always present when services with a market rate of more than $[12]5 have been provided." *Id.* at 571–72.[2] According to the Court, "the 'special factor' formulation suggests Congress thought that $[12]5 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." *Id.* at 572. And "[i]f that is to be so, the exception for 'limited availability of qualified attorneys for the proceedings involved' must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Id.* Thus, the Court stated that the example "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question— as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* The Court then provided two examples of the former: "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.*

---

[2] Congress raised EAJA's hourly rate cap from $75 per hour to $125 per hour in the Small Business Regulatory Enforcement Fairness Act of 1996, Pub L. No. 104-121, § 231(b)(1), 110 Stat. 847, at 863 (1996), in order to bring EAJA awards "more closely in line with current hourly rates charged by attorneys." 141 Cong. Rec. S3895, S3896 (daily ed. Mar. 14, 1995) (statement of Sen. Feingold). That the $125 per hour cap appears significantly outdated in 2018 cannot be a basis for redefining the "special factor" language in the statute. Congress may address any current inconsistency with the realities of legal practice by raising the statutory cap.

The Court then shifted from the "limited availability" example to the broader "special factor" category, writing that, "[f]or the same reason of the need to preserve the intended effectiveness of the $75 [now $125] cap, we think the other 'special factors' envisioned by the exception must be such as are not of broad and general application." *Id.* at 573. The Court did "not specify what they might be," but noted that the factors on which the district court relied—the "novelty and difficulty of issues"; the "undesirability of the case"; the "work and ability of counsel"; and "the results obtained"—"are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.* Finally, it rejected the district court's reliance on "the contingent nature of the fee," finding it to be "too generally applicable to be regarded as a 'special' reason for exceeding the statutory cap" because it is untethered to real-world expectations. The Court concluded by stating, "we do not think it was Congress' purpose, in providing for reimbursement in a very small category of cases, to subsidize all contingent-fee litigation with the United States." *Id.*

The parties dispute the extent to which the structure and purpose of the EAJA and *Pierce*'s interpretation of the statute limit the universe of potential "special factors." The government submits that the overall structure of § 2412(d), the listed example of a permissible "special factor," and *Pierce*'s observation that "Congress thought that $75 [now $125] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be," 487 U.S. at 572, reveal that "special factors" are limited to those factors that "specifically 'justif[y]' a[n] *hourly rate* higher than the statute's maximum hourly-rate cap." Appellant Br. 14. Government misconduct in the agency process—in this case, the procurement process—in the government's view "does not fit that bill." *Id.* at 15.

Starry, unsurprisingly, disagrees. It submits that the statutory rate of $125 per hour "is merely a default rate," and that Congress "plainly entrusts to the trial court's discretion whether the circumstances of a particular case justify a deviation from" that rate "based on the party's conduct." Appellee Br. 28–29. It also contends that, under *Pierce*, a "special factor" is "any factor that is unique and not applicable to a broad spectrum of litigation, and of a nature such that a higher fee award is right and reasonable under the circumstances." *Id.* at 30.

We agree with the government that the text, structure, purpose, and legislative history of the EAJA, and *Pierce*'s analysis thereof, require that "special factors" involve circumstances in which something atypical directly impacts the hourly rate necessary for the litigation in question. To begin, "as a waiver of sovereign immunity, the EAJA must be strictly construed in favor of the sovereign." *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 721 (Fed. Cir. 1998) (citing *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 502 (Fed. Cir. 1991)). The EAJA "'lifts the bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute, [but] does so only to the extent explicitly and unequivocally provided.'" *Levernier*, 947 F.2d at 502 (quoting *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1386 (Fed. Cir. 1983)); *see also United States v. Nordic Village Inc.*, 503 U.S. 30, 33–34 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" (citations omitted)); *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) (explaining that, when the United States is liable for attorney fees it otherwise would not be liable for, it has partially waived its sovereign immunity and such waiver must be construed in favor of the United States).

Here, the phrase "special factor, such as the limited availability of qualified attorneys for the proceedings involved" does not "explicitly and unequivocally" include

egregious prelitigation government misconduct. Though the term "special factor," standing alone, is ambiguous, Congress's decision to include an example of a qualifying "special factor" cabins the contextual meaning of the term. *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (explaining that "the principle of *noscitur a sociis*—a word is known by the company it keeps—[helps] 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress'" (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995))). Congress's inclusion of the "qualified attorneys" example in § 2412(d)(2)(A) suggests that it intended for other "special factors" likewise to involve circumstances in which something atypical—i.e., "special"—justifies increasing the litigating attorney's hourly rate beyond the rate Congress generally found to be appropriate. Because "[a]n exception to a 'general statement of policy' is 'usually read . . . narrowly in order to preserve the primary operation of the provision,'" we decline Starry's invitation to construe the "special factor" exception to "operate to the farthest reach of [its] linguistic possibilities" in a manner that "contravene[s] the statutory design." *Maracich v. Spears*, 133 S. Ct. 2191, 2200 (2013) (citations omitted).

The broader structure of § 2412(d)(2)(A) lends further support to the understanding that "special factors" must directly impact the hourly rate necessary for the litigation in question. The parenthetical in this subsection explains that "[t]he amount of fees awarded under [§ 2412(d)] shall be based upon the prevailing market rates for the kind and quality of the services furnished," with the caveat that "attorney fees shall not be awarded in excess of $125 per hour" unless the court finds either the cost-of-living adjustment or the "special factor" exception applicable. 28 U.S.C. § 2412(d)(2)(A). The plain language permits the trial court to award fees *below* $125 per hour if it finds the market rate for the services furnished to be less than

this rate, but only permits the court to award fees *above* $125 per hour if one of the two statutorily defined exceptions justifying an upward departure exist. The first exception arises where an increased cost of living in the relevant geographic market renders $125 per hour insufficient compensation for the services provided to counteract "the deterrent effect" of having to litigate against the government and its "greater resources and expertise." EAJA, Pub. L. No. 96-481, §§ 202(b), (c)(1), 94 Stat. 2321 (1980). The second—"special factors"—must likewise have a nexus to the hourly rate necessary to combat this deterrent effect.

Agency misconduct, even if egregious, does not bear any nexus to the reasonable hourly rate an attorney might charge in litigation, and, thus, cannot "justify" awarding fees at a rate above $125 per hour. Unlike the examples discussed in *Pierce*—a specialty in patent law or foreign language skills—there is nothing about litigating a bid protest case, even when the agency engaged in "egregious" misconduct, that requires "some distinctive knowledge or skill" that is both "needful for the litigation in question" and "can be obtained only at rates in excess of the [$125 per hour] cap." 487 U.S. at 572. Nor have the Claims Court or Starry identified anything of the sort. Additional *effort* might be required to vindicate one's rights where the agency engaged in misconduct during the procurement process—efforts reflected in the reasonable number of hours spent to do so—but no "distinctive knowledge or skill" was "needful" to prevail in such a litigation.

Starry also points to § 2412(d)(1)(C), arguing that the provision evinces an intent to "entrust to the trial court's discretion whether the circumstances of a particular case justify a deviation from the default recovery rate, an increase or decrease in the rate, or no recovery at all based on the party's conduct." Appellee Br. 28–29. Section 2412(d)(1)(C), however, only authorizes courts to

"*reduce* the amount to be awarded pursuant to this subsection, or *deny* an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy."  28 U.S.C. § 2412(d)(1)(C) (emphases added).  While the EAJA confers significant discretion on trial courts to award fees at a rate *below* $125 per hour, it only permits an upward departure from this rate if the court finds that one of the two statutory exceptions exists.  Said a different way, § 2412(d)(2)(A) limits trial courts' discretion to award fees above the rate Congress determined "was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." *Pierce*, 487 U.S. at 572.  Nothing in § 2412(d)(1)(C) changes that fact.  To be sure, § 2412(d)(2)(A)'s "such as" language implies that Congress left open the possibility that *something* other than the availability of specialized counsel might qualify as a "special factor."  Whatever else might be encompassed within the "special factor" exception, we do not believe the language is so broad as to confer unfettered discretion to increase the hourly rate by which a fee award is calculated.

This is not to say that the EAJA does not take government misconduct into account.  First, it is likely that additional effort on the part of the private party's attorneys that is necessitated by agency misconduct would be reflected in an increase in the reasonable number of hours for the purpose of a lodestar calculation.  Because the lodestar, "the guiding light of [the Supreme Court's] fee shifting jurisprudence," *Murphy*, 138 S. Ct. at 789 (citation omitted), is "the product of reasonable hours times a reasonable rate," *id.* (citation omitted), a prevailing party can recover an increased fee award through an increase in the reasonable number of hours, not just through a corresponding increase in the reasonable fee rate. *Cf. Blum v. Stenson*, 465 U.S. 886, 898 (1984) (explaining, in the

context of an award under The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988 (1976 ed., Supp. V), that "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel, and thus do not warrant an upward adjustment in a fee based on the number of billable hours times reasonable hourly rates").

Second, when the government litigates in "bad faith" or exhibits other egregious misconduct, the prevailing party can seek a fee award under § 2412(b), which provides that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."  In relevant part, the common law permits courts to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)); *see also Goodyear Tire & Rubber Co v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("[O]ne permissible sanction is an 'assessment of attorney's fees'—an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." (citation omitted)). Congress's decision to waive sovereign immunity and authorize an additional attorney fee award when the government acts in bad faith strongly implies that it did not intend for § 2412(d)(2)(A)'s "special factor" exception to encompass egregious misconduct.[3]

---

[3]    As noted, Starry did not seek fees under § 2412(b), notwithstanding its belief—with which the Claims Court agreed—that HHS engaged in egregious misconduct.  At oral argument, counsel for Starry submitted that its client could not have moved for fees under both § 2412(b) and

We note, moreover, that the unreasonableness of the government's substantive decisions at both the agency and litigation stage is factored into the threshold question of whether to award fees in the first instance under § 2412(d)(1)(A). The Supreme Court held in *Pierce* that fees can only be awarded under § 2412(d)(1)(A) where the government's litigation position is not "substantially justified"—that is, "justified to a degree that could satisfy a reasonable person." 487 U.S. at 565. Thus, a prevailing party is only entitled to fees under § 2412(d) in the "very small category of cases" in which "the Government's position will be deemed *so* unreasonable as to produce an EAJA award." *Id.* at 574. The fact that Congress tasked trial courts with evaluating the substance of the government's position under § 2412(d)(1)(A), prior to determining what hourly rate to apply under § 2412(d)(2)(A), suggests § 2412(d)(2)(A)'s "special factor" analysis does not permit courts to later reconsider the propriety of the agency's actions when calculating the amount of the award.

The Second Circuit reached an analogous conclusion in *Cassuto v. Commissioner*, 936 F.2d 736 (2d Cir. 1991). In that case, two taxpayers filed petitions in the United States Tax Court challenging three Notices of Deficiency

---

§ 2412(d), but was unable to point to language in the EAJA or any other law that would have prohibited it from doing so. Oral Arg. at 22:35–23:20, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-2148.mp3. We likewise find nothing in the EAJA that prohibits a prevailing party from seeking fees under both § 2412(b) and § 2412(d), and note that prevailing parties in other cases have successfully moved for fees under both provisions. *See, e.g.*, *Lauritzen v. Lehman*, 736 F.2d 550 (9th Cir. 1984) (sanctioning the district court's authority to award fees under either provision).

issued by the Commissioner of Internal Revenue, and "substantially prevailed" with respect to certain of their challenges. *Id.* at 738–39. They then moved for an award of reasonable litigation costs under 26 U.S.C. § 7430. That statute, like § 2412(d), authorizes an award of attorney fees except where "the position of the United States in the proceeding was substantially justified," 26 U.S.C. § 7430(c)(4)(B)(i), and caps fees at a particular hourly rate "unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate," *id.* § 7430(c)(1)(B)(iii). The taxpayers argued, among other things, that "the Commissioner's improper behavior in issuing [one] Notice of Deficiency, which 'forced' the[m] to settle the case for an amount which includes the tax deficiency for 1980, a time-barred year, constitutes a 'special factor.'" *Cassuto*, 936 F.2d at 743–44. The Second Circuit disagreed, writing:

> the Commissioner's conduct has already been taken into account by the Tax Court's determination that his positions in the 1980 and 1982 Notices was [sic] "not substantially justified." The justification, or lack thereof, for the Commissioner's position is a *threshold question* that must be first examined to determine whether a litigant even has a case for fees under § 7430. To also qualify this query as a "special factor" in the calculation of the amount of the fee award is inappropriate; otherwise a "special factors" analysis would *amount to a vehicle for assessing punitive damages*—a notion that receives no support in the structure or language of the statute.

*Id.* at 744 (emphases added). This reasoning is persuasive, and Starry's efforts to distinguish *Cassuto* are not.

### B.  Purpose and Legislative History

Congress's stated purposes in enacting the EAJA and the Act's legislative history underscore the understanding that the phrase "special factor" in § 2412(d)(2)(A) does not encompass egregious agency misconduct.  The EAJA was enacted for two express purposes:  (1) "to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States"; and (2) "to insure the applicability in actions by or against the United States of the common law and statutory exceptions to the 'American rule' respecting the award of attorney fees."  EAJA § 202(c).

The EAJA incorporates the common law and statutory fee-shifting exceptions in § 2412(b), and effectuates the first of these purposes—combating the "deterrent effect" of litigating against the government—through § 2412(d).  The Supreme Court added additional gloss to the reasons for which Congress enacted the EAJA, stating that "[t]he Committee Reports of both the House and the Senate reflect the dual concerns of *access* for individuals and *improvement* of Government policies," with the House of Representatives stating that "[t]he exception created by [the EAJA] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 164 n.14 (1990) (quoting H.R. Rep. No. 96–1418, at 12 (1980)).

Providing adequate compensation for attorneys and punishing governmental misconduct—both of which are common justifications for departing from the "American rule" that litigants are typically responsible for their own attorney fees—are not among the reasons that Congress enacted § 2412(d).  Instead, it found that a rate of $125 per hour was "generally quite enough public reimbursement for lawyers' fees" to advance § 2412(d)'s dual aims of

increasing access to the courts for individuals and small businesses and improving government policies, *Pierce*, 487 U.S. at 572, and authorized such fees under this subsection. Only where something "justifies" increasing the statutorily prescribed rate to advance these aims can the trial court award fees in excess of this rate. There is nothing "special" about combating agency misconduct that fits the bill.

## C. Decisions from Other Circuits

Finally, we observe that our interpretation is in line with the majority of decisions from other federal courts of appeal that have considered § 2412(d) and related statutes. The Second Circuit, in addition to deciding *Cassuto*, interpreted § 2412(d) the same way we do here in *Kerin v. U.S. Postal Service*, 218 F.3d 185 (2d Cir. 2000). There, the court held that § 2412(d) "provides for fee awards above the statutory ceiling only in certain limited circumstances, not including bad faith," and observed that "enhancing a fee award under § 2412(d) for bad faith" would be "erroneous[]." *Id.* at 191. The Second Circuit observed that the district court "may have conflated §§ 2412(b) and (d)" in awarding such an enhancement, explaining that the district court cited cases that "explicitly rely on § 2412(b), which is the sole permissible basis for any award of bad faith fees under the EAJA, entirely separate from § 2412(d)." *Id.* Starry argues that *Kerin* did not "hold that outrageous agency conduct of the type seen here cannot form the basis of a special factor enhancement." Appellee Br. 48. We disagree—the Second Circuit's express disagreement with the district court's decision to award fees above the statutory rate based on its findings that the U.S. Postal Service exhibited "bad faith," acted with "unfairness and arrogance," litigated a counterclaim that was "excessive," "unreasonable," and "retaliatory," and acted improperly by using its superior resources to "cavalierly brush [ ] aside" Kerin's claims by "deploy[ing] expert after expert to crush [Kerin] whichev-

er way he turned," *Kerin*, 218 F.3d at 188, are precisely the type of "outrageous" or "egregious" misconduct with which the Claims Court took issue here.

The Fifth Circuit in *Estate of Cervin v. Commissioner*, 200 F.3d 351 (5th Cir. 2000), similarly determined that, in the § 7430 context, "improper behavior" by the Government and "untenable" Government "litigating positions" cannot qualify as a "special factor" justifying an increase in the statute's maximum hourly rate. *Cervin*, 200 F.3d at 357–58. According to the court, "in light of the Commissioner's superior construction of § 7430 and of the punitive nature of the remedy suggested by petitioners, we conclude that the government's litigation position cannot be a "special factor" warranting an increase above the statutorily allowed $75 per hour. This is so regardless of how 'untenable' that position might be." *Id.* at 358. Again, Starry's effort to distinguish *Cervin* based on a purported distinction between the "specific litigation positions" in that case and "the type of outrageous agency conduct seen" in this case, falls short.

The cases cited by Starry do not alter our view. The discussion of § 2412(d)(2)(A) in *Jean v. Nelson*, 863 F.2d 759 (11th Cir. 1988), *affirmed on other grounds, Commissioner v. Jean*, 496 U.S. 154 (1990), while seeming to read *Pierce* more broadly than we do here, was dicta. *See id.* at 776. That discussion, moreover, focused on litigation misconduct, not agency behavior predating litigation or on the mere fact that the government chose to defend that behavior in court.

*Pollgreen v. Morris*, 911 F.2d 527 (11th Cir. 1990), is similar. While the Eleventh Circuit opined that government delay in litigating a case could constitute a "special factor" if "the government's litigation delay was the result of bad faith or the length of the delay was excessive, regardless of the merits of the position litigated," it did not find that such circumstances existed in the case before

it. *Id.* at 537–38. Again, that discussion was dicta. And the court said nothing about agency misconduct before the litigation commenced. Perhaps more importantly, the cases the Eleventh Circuit cited for the proposition that bad faith delay may constitute a "special factor" all pre-date *Pierce*. We already have concluded that decisions "permitting adjustment to the fee rate for delay in receipt of fees as a 'special factor'" were "expressly discredited" by *Pierce*. *Chiu v. United States* 948 F.2d 711, 721 (Fed. Cir. 1991). We find no reason to reconsider that determination.

## III. CONCLUSION

While, like the Claims Court, we find HHS's misconduct in connection with this procurement inappropriate—even egregiously so—we do not believe that § 2412(d) provides a vehicle for addressing that fact, other than via a recognition that additional hours of attorney effort might be factored into the lodestar calculation. Accordingly, the Claims Court's decision awarding Starry attorney fees and costs under § 2412(d) of the EAJA is

## VACATED AND REMANDED

### COSTS

No costs.